[Civ. No. 13235. Third Dist. Oct. 24, 1972.]

ALBERT M. LACY et al., Plaintiffs and Appellants, v.
LAURENTIDE FINANCE CORPORATION, Defendant and Respondent.

252

## COUNSEL

Zane Vorhes for Plaintiffs and Appellants.

Carroll, Burdick & McDonough and Steven Alan Beilock for Defendant and Respondent.

## OPINION

**PIERCE, J.***—The appeal is by plaintiffs from a summary judgment in favor of defendant. The complaint was in two counts, one pleading false imprisonment, the other was labeled an action "for abuse of process" but misnamed.

### STATEMENT OF FACTS

The records of the Municipal Court of the Sacramento Municipal Court District, County of Sacramento, show that on September 27, 1967, Laurentide Finance Corporation ("Laurentide") brought therein a "COMPLAINT FOR MONEY" against plaintiffs herein ("Lacys"). A writ of attachment issued, the salary of Mrs. Lacy was garnisheed on November 2, 1967, and again later. Defendants Lacy were served with summons and complaint in October 1967; a request for default was filed September 18, 1968; no appearance was made by either defendant; and on April 10, 1969, judgment by default was entered in favor of plaintiff for $256 damages, $70 attorney's fees and $20 costs, a total of $346.

On July 8, 1970, the Lacys filed in the Superior Court of Sacramento County the complaint in the action out of which these proceedings arise. The cause of action, pleading false imprisonment, alleges that on December 2, 1969, plaintiff (spoken of in the singular and referring to Mrs. Lacy) while sitting in her automobile was deprived of her liberty "by defendant, and their [*sic*] agents."

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

We discuss the second cause of action pleaded in somewhat greater detail. It alleges the cause of action which we have noted above brought by Laurentide. It also alleges the judgment obtained by Laurentide and the date of that judgment. It then alleges ownership by the Lacys of an automobile in which Laurentide had no interest and a writ of execution caused to be levied by it against the automobile (stated to be in abuse of process), and it contains this allegation: "defendant well knowing that plaintiffs had paid said debt by way of compromise on November 3, 1967." The prayer of the complaint sought $100,000 general damages, $100,000 punitive damages, and that "[a]ll levies of execution be declared void and cancelled, for damages in the sum of $100,000.00."

On June 17, 1971, after answer filed (in fact after some steps in discovery had been taken and the case set for trial), Laurentide noticed a motion for summary judgment of the complaint as a whole. In its supporting documents it recognizes the Lacys' claim of compromise pending prior to the judgment in the municipal court action. *The claim was neither admitted nor denied.* Laurentide stood solely on a contention that an action for "abuse of process" could not be prosecuted upon an attempt to levy execution on a judgment valid on its face. Laurentide conceded that a judgment such as it had obtained in the municipal court could, if void, be attacked in three ways: (1) by motion in the municipal court, (2) by appeal, and (3) "by an independent action in equity to set aside the default." Regarding the count in the complaint for false imprisonment, we will discuss the contentions briefly below.

The declaration of Mrs. Lacy in opposition to the motion for summary judgment alleges the municipal court action commenced by Laurentide. It then asserts: "On November 3, 1967, I paid $20.00 on the said debt to LAURENTIDE FINANCE CORPORATION. I went in approximately two weeks later to the LAURENTIDE FINANCE CORPORATION office on Folsom Boulevard, Sacramento, California, and paid an additional $100.00 in full settlement of the debt.

"I heard nothing further in this matter until Tuesday, December 2, 1969, at approximately 2:50 P.M." The declaration then continues with an explanation of the attempt by a deputy sheriff to seize her car. There is the additional declaration that "LAURENTIDE . . . issued said Writ of Execution several years after the case had been settled knowingly and wilfully knowing that they were misusing the Writ of Execution with malice."

In the complaint there are allegations of acts of a deputy sheriff in

attempting to levy the writ on Mrs. Lacy's automobile while she and others were sitting therein and a commotion in the neighborhood calculated to hold the Lacys up to obloquy and scorn, all to their damage in the sum of $100,000. Punitive damages were also claimed.

## APPLICABLE LAW

Laurentide argues here, and argued successfully in the trial court, that neither the pleadings nor showing before the court on the proceedings on the defendant's motion for summary judgment stated facts which constitute abuse of process.

■ Abuse of process is a narrowly defined wrong consisting of the misuse of the process of the court (such as attachment for execution) by using it for a purpose other than that for which the process is designed. Here, the process allegedly abused was a writ of execution which is the process of a court authorizing the seizure of property of a judgment debtor for the satisfaction of a money judgment against him. To establish "abuse of process" the Lacys would have to show evidence which reasonably tends to prove the two necessary elements of an abuse of process: (1) the existence of an ulterior motive, and (2) an act in the use of the process other than such as would be proper in a regular prosecution of its charge. (See Rest., Torts, § 682, approved in *Meadows* v. *Bakersfield S. & L. Assn.* (1967) 250 Cal.App.2d 749, 752 [59 Cal.Rptr. 34] (hg. den.); 2 Witkin, Summary of Cal. Law (1960) Torts, § 101, p. 1272; 5 Witkin, Cal. Procedure (2d ed. 1971) Enforcement of Judgment, § 2, p. 3388; Code Civ. Proc., §§ 681, 682, 684; *Pimentel* v. *Houk* (1951) 101 Cal.App.2d 884, 887 [226 P.2d 739]; *Spellens* v. *Spellens* (1957) 49 Cal.2d 210, 231 et seq. [317 P.2d 613].)[1]

---

[1]Cf. *Czap* v. *Credit Bureau of Santa Clara Valley* (1970) 7 Cal.App.3d 1 [86 Cal. Rptr. 417]. In that decision by the first district a credit bureau in the original municipal court action had caused a writ of garnishment after judgment to be levied against the *exempt* wages of the judgment debtor, Joan Czap. Levy of that writ was not contested in the municipal court action in which the judgment for $250 had been entered, but there were abortive negotiations for settlement of the judgment by installment payments. After her exempt wages were garnisheed, Mrs. Czap brought a superior court action (without label, apparently) for intentional harassment due to the first levy and asserted threatened malicious repetitive levies of writs of garnishment against her exempt wages. The trial court granted judgment for the credit bureau after demurrer sustained. On appeal that judgment was reversed. The appellate court held that Mrs. Czap had stated a cause of action. The appellate court labeled it for "abuse of process" and correctly so. A writ of garnishment is not designed to be issued and levied against exempt wages or salaries. The *Czap* case therefore is distinguishable from the instant case. However, the end result reached by the first district (as we shall point out below) is the same result as that reached here—to give a wronged plaintiff a remedy for the wrong done.

Also, neither the pleadings nor the declaration in opposition to the motion for summary judgment set forth a triable issue of fact on the count for false imprisonment. Laurentide personally committed no acts giving rise to that tort known as false imprisonment. Causing a writ to be issued and requesting service does not create such liability. (*Vivell* v. *City of Belmont* (1969) 274 Cal.App.2d 38, 40 [78 Cal.Rptr. 841]; *Hamilton* v. *Waters* (1949) 93 Cal.App.2d 866, 867-868 [210 P.2d 67].) Nor does the declaration in opposition to the motion allege any facts which could possibly make defendant liable under that count.

Discussion, however, does not rest with a determination that plaintiffs have not pleaded and cannot prove a cause of action either in "abuse of process" or in "false imprisonment." ■ Summary judgment under Code of Civil Procedure section 437c lies only when it is shown (in this case in favor of defendant) that plaintiffs have NO triable issue of fact under *any* cause of action pleaded. (Code Civ. Proc., § 437c.) Cases construing that code section are legion. (See West's Code Civ. Proc. Ann., § 437c, pp. 688-708.) ■ It is perhaps sufficient to say here that a motion for summary judgment is not a trial on the merits; its purpose is merely to determine whether there is an issue to be tried. (*Walsh* v. *Walsh* (1941) 18 Cal.2d 439, 441 [116 P.2d 62].) Because the procedure is summary and presented on affidavits without the benefit of cross-examination, a trial by jury and opportunity to observe the demeanor of witnesses in giving their testimony, the affidavits filed on behalf of the moving party are strictly construed, and those in favor of the party against whom the motion is made "must be accepted as true, and . . . such affidavits to be sufficient need not necessarily be composed wholly of strictly evidentiary facts." (*Eagle Oil & Ref. Co.* v. *Prentice* (1942) 19 Cal.2d 553, 556 [122 P.2d 264].)

With these rules in mind we summarize in essence the plaintiffs' pleadings (i.e., the complaint) and Mrs. Lacy's declaration in opposition to defendant's motion.

First, in connection with the caption of the complaint, courts have generally agreed that mistaken labels and confusion of legal theory will not be fatal but the substantial allegations of fact must fit into the pattern of some established right or remedy. (See 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 21, pp. 1706-1707.) To state that is of very little help to this court in solving the problem confronting us. Of vastly greater help is the discussion of "Theory of the Pleading" (*id.*, § 300, pp. 1972-1973, and § 301, pp. 1974-1975). In section 301 the author states on page 1974, quoting: " 'The form of the action is immaterial, if a cause of action is

actually stated; the doctrine of "theory of the pleading" has long been repudiated in this state.' " (It may be added, that even in the early cases it was the theory at the time of trial, with liberal rights in the parties of amendment, which counted (*id., § 300*).)

This court next considers the prayer—obviously, to some extent at least, insufficient since it sought only (so far as strictly equitable relief is concerned) to *vacate* "the levy" of the writ of execution but did not pray to vacate the judgment. It is stated in 3 Witkin, California Procedure (2d ed. 1971) Pleading, section 376, pages 2039-2040: "In a *contested case* a prayer which seeks the wrong relief or fails to demand adequate relief is not a serious defect. C.C.P. 580 provides that if the defendant answers the court may grant 'any relief consistent with the case made by the complaint and embraced within the issue,' and the rule is well settled that in a contested case the plaintiff may secure relief different from or greater than that demanded. [Citations.]

"It has been held, however, that where the complaint alleges specific amounts of general and special damages, it is error to award a greater sum, and the judgment will be modified to reduce it. [Citations.]"

Sufficient has been stated to illustrate that courts look to substance rather than form, and in the interest of serving the tradition that litigation and adjudication are a search for the truth, and that especially at trial level a party will be insured his "day in court."

█ We epitomize in summary form the allegations of the second count to show what plaintiffs actually did plead. Although they did not sufficiently plead or show a *form* of action they denominated, they *did* accurately plead (at least against all except special demurrer *and no demurrer was filed*) a suit in equity for extrinsic fraud with incidental damages. They pleaded (1) that Laurentide was a corporation; (2) that on September 27, 1967, defendant Laurentide filed a verified complaint (for debt) against the Lacys in the Sacramento Municipal Court; (3) that on November 3, 1967, plaintiffs paid the debt that Laurentide's action had been brought to collect "by way of compromise"; (4) that Laurentide *well knew that said debt had been paid;* (5) that notwithstanding such payment, on April 10, 1969, Laurentide obtained a judgment for $346 against the Lacys in the municipal court action; (6) that Laurentide caused an execution to be issued on that judgment; (7) that Lacys are the owners of an automobile; (8) that Laurentide *with intent to create a fictitious claim against* the Lacys not only caused execution to be issued but caused it to be levied by delivering it to a sheriff to be served. They also pleaded (9) that Laurentide acted maliciously; (10) that by reason of the aforementioned judgment and

execution the Lacys were subjected to great and irreparable loss (which is spelled out); and (11) that they have been damaged in the sum of $100,000. (12) Punitive damages are also prayed for.[2]

As stated above, this states substantially a cause of action *containing every element of a suit in an action for extrinsic fraud.* The charge was amplified when Mrs. Lacy filed her declaration in opposition to the motion for summary judgment, and therein she stated evidentiary facts. We have already set forth the essential facts verbatim. Effectually, they show (1) that when the complaint in the municipal court was filed (and when, as shown by the record, her wages were garnisheed), the Lacys were served with complaint and summons, *a debt was owed;* (2) that on November 3, 1967, Mrs. Lacy paid $20 on account of that debt; (3) that approximately two weeks later, at the Folsom Boulevard office of Laurentide, an additional $100 was paid *"in full settlement of the debt"* (italics ours); (4) that she heard nothing further until December 2, 1969; (5) that *Laurentide knew that the debt had been settled,* but (6) nevertheless caused a writ of execution to be issued (this necessarily is the equivalent of a declaration that Laurentide knew it acted fraudulently when it took a judgment on a lawsuit which it knew had been settled and which it therefore was by law obligated to dismiss). (7) Facts are then alleged, which, if true, would entitle the Lacys to very substantial damages, alleged by them to be in the sum of $100,000. True, the Lacys failed to add the conclusion of law that this was extrinsic fraud but that is what was alleged.

As we have shown above, the trial court, at the motion for summary judgment stage, was obligated to accept every one of these facts pleaded and set forth in the declaration as being true. It did not do so. It made the same mistake the plaintiffs' attorney seems to have made—it assumed that a complaint mislabeled as one for "abuse of process" is the only way that a judgment, and process under that judgment, can be erased. The trial court in granting the motion said: ". . . Hamilton v. Waters, 93 Cal.App. 2d 866 (1949) . . . appears to be controlling."

---

[2]We quote aptly from 3 Witkin, California Procedure, (2d ed. 1971) Pleading, section 575, page 2213: "In reading the cases one gains the impression that entirely too much emphasis has been laid upon the requirement of specific pleading. The characterization of some actions as 'disfavored' has little to recommend it . . . ., and actions based on fraud are so numerous and commonplace that the implications of immoral conduct are seldom considered more serious than those involved in other intentional torts. Hence, while it seems sound to require specific pleading of the facts of fraud rather than general conclusions, the courts should not look askance at the complaint, and seek to absolve the defendant from liability on highly technical requirements of *form in pleading.* Pleading facts in ordinary and concise language is as permissible in fraud cases as in any others, and liberal construction of the pleading is as much a duty of the court in these as in other cases." (Italics ours.)

That case was not controlling on the question of the Lacys' right to bring a suit in equity for extrinsic fraud.[3]

■ Finally, we consider the question of whether it was proper for the Lacys to commence this action in the superior court notwithstanding that the original action was brought and judgment taken in the municipal court.

It is properly conceded by Laurentide that a separate action in equity may be brought to wipe out a judgment obtained by a party for *extrinsic* fraud. It is conceded that if any fraud occurred, it was extrinsic fraud.

After the adoption in 1966 of section 5 of article VI of the California Constitution, the courts at first held that under that provision and its implementing statutory enactment (Code Civ. Proc., § 89) a municipal court had very limited equity jurisdiction, which did not include the general equity power to set aside judgment for fraud, mistake, neglect and the like after the statutory six months had passed. Thus, it was held in 1969 that a municipal court had no power to set aside such a judgment because section 89 did not give it that power. (*Bloniarz* v. *Roloson* (1969) 70 Cal.2d 143 [74 Cal.Rptr. 285, 449 P.2d 221].) The court said the municipal court should transfer such a case to the superior court.

*Bloniarz* was decided in January 1969. Later that same year the Legislature amended section 89 to add a provision specifically permitting a municipal court to exercise equity jurisdiction to vacate a judgment obtained through extrinsic fraud, mistake, inadvertence, or excusable neglect. (Code Civ. Proc., § 89, subd. (b)(3), as added by Stats. 1969, ch. 773, pp. 1549-1551.)

In 1971 section 89 was further amended to add subdivision (c) thereto, which provides that in any action *otherwise within its jurisdiction,* the court may impose liability whether the theory upon which relief is sought involves legal or equitable principles. This amendment was made specifically to overturn the ruling in *Castellini* v. *Municipal Court* (1970) 7 Cal.App.3d 174 [86 Cal.Rptr. 698], which held that under section 89 there was no *general* equity jurisdiction in the municipal court. (Stats. 1971, ch. 1022, § 2.)

---

[3]*Hamilton* v. *Waters, supra,* was a case in which Hamilton had been dispossessed under a judgment obtained by Waters in an action for unlawful detainer. In the original action the serving of a three-day notice had been alleged, the insufficiency of the notice had been raised as an issue, Hamilton had appeared, the issue had been fully tried. After judgment, Hamilton had by another action raised the same issue. The case is not in point. Here, when the Lacys allowed their default to be taken, they had owed the debt. After the settlement they were undoubtedly careless. They did not cause a dismissal with prejudice of the original action to be filed. They should have done so. (Assuming, as we must assume at this stage, that the original action had been settled.)

But it must be noted that the $5,000 monetary limit still prevails throughout section 89. Accordingly, since either the municipal court or the superior court has jurisdiction to grant relief from a judgment, if the damages flowing from the injury for which the relief is sought are over $5,000, a municipal court would be required by section 396 of the Code of Civil Procedure to transfer the case to the superior court. It follows, of course, that since the instant *(Lacy)* case is already in the superior court, it would be a fruitless and idle act to transfer it down, only to have it transferred up again as required by section 396. The section is mandatory, not discretionary. *(Brady* v. *Kobey* (1938) 27 Cal.App.2d 505 [81 P.2d 263].)

Judgment is reversed.

Richardson, P. J., and Janes, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied December 20, 1972.