[Civ. No. 13837. Fourth Dist., Div. Two. Apr. 7, 1975.]

VANGUARD INSURANCE COMPANY, Plaintiff and Appellant, v. PAUL D. SCHABATKA et al., Defendants and Respondents.

888

COUNSEL

Braslow & Oria, Jeffrey K. Oria and Charlotte Oria for Plaintiff and Appellant.

Rose, Klein & Marias and Jack N. Whitaker for Defendants and Respondents.

OPINION

McDANIEL, J.—Plaintiff insurance company has appealed from a judgment adverse to its contentions in a declaratory relief action. The action was filed to resolve a dispute between the company and its insureds over the application of the policy's uninsured motorist coverage to the following facts:

■ On December 9, 1972, in Buena Park, Helen L. Schabatka, wife of the defendant Paul D. Schabatka (Paul hereafter), while she was crossing a street as a pedestrian, was struck and killed by an uninsured motorist. This was not a hit-and-run situation; the driver of the automobile was identified as Timothy H. Shipman, and all parties agree that the driver-owner of the vehicle causing death was uninsured within the meaning of Insurance Code section 11580.2.

Paul was not present at the scene of the accident. Although such absence from the scene and the fact that he learned of his wife's death sometime after it occurred are not covered by the findings, these circumstances are described in an affidavit signed by Paul and on file as part of the trial court proceedings.

From this affidavit and to a certain extent from the findings it appears further that when Paul heard the news of his wife's death he "began to get a chest pain similar to the pain that [he] had been treated for by Dr. Mark H. Hopp in approximately June of that year [1972]." In the language of the findings, this defendant presented a claim (and demand for arbitration) under the policy for "bodily injury arising out of emotional stress he claims to have suffered as a result of the aforesaid accident."

Besides Paul, the surviving spouse, the deceased Mrs. Schabatka left two surviving children, Jackie Lee Shelton and Connie Lee Shelton. They and Paul as survivors and heirs of the decedent also filed a claim and demand for arbitration under the policy. The policy had single-injury limits of $15,000 and multiple injury limits of $30,000. In response to these claims and demands, each of which asserted that the multiple limits were subject to claim, the plaintiff filed its action for declaratory relief.

The complaint in its charging allegations says in paragraph VIII:

"An actual controversy now exists between the plaintiff and defendants as follows:

"Plaintiff contends that the total amount available to be distributed between the claimants-heirs under the subject policy is $15,000.00 and that the issue of the amount of coverage is not an arbitrable issue.

"Defendants contend that the total amount available to be distributed between the claimants-heirs under the subject policy is $30,000.00 and that the issue of the amount of coverage is an arbitrable issue."

Defendants did not demur to the complaint. In their answer they addressed themselves only to the two contentions about the respective amounts of coverage, admitting that their position was "that the total amount Defendants claim available for distribution under the subject policy is $30,000.00." In addition, they alleged in paragraph IV of their answer, "Defendants deny that they make such contention as 'claimants-heirs', but rather contend that their claims are based upon the fact that they are each claimant heirs and that Defendant, PAUL D. SCHABATKA, was separately injured physically due to the incident that gives rise to the claim subject of the proposed arbitration mentioned herein." In the prayer appended to their answer, the defendants ask the court to declare by judgment the rights and liabilities of the parties.

When the case came to trial, it was submitted on the trial briefs and points and authorities which included Paul's affidavit already noted. There having been no pretrial conference and thus no order to frame the issues, the issues presented for trial were framed by the pleadings. Aside from denying the allegations about their residences, the defendants admitted the first seven paragraphs of the complaint which allege most of the extrinsic facts already summarized. Paragraph VIII alleged the

nature of the controversy as quoted above; in answer to those allegations the defendants addressed themselves only to the amounts of coverage disagreed upon and were silent as to whether these amounts of coverage were or were not arbitrable issues. Paragraph IX alleged that plaintiff had no plain, speedy, or adequate remedy at law and alleged also that if an award were made in arbitration it would be final and binding on plaintiff and that plaintiff would suffer irreparable injury if the arbitration were not enjoined. These allegations were denied by defendants.

The complaint contains no paragraph X or XI, but paragraph XII alleged that "[t]he decision of the Court is required to determine the rights and duties of the respective parties herein." Defendants did not respond to paragraph XII, and so it was legally admitted. (Witkin, Cal. Procedure (2d ed.) § 874, p. 2473.) Again, we note that the defendants in their answer took the position of contending that as surviving heirs of the decedent they were entitled to have the multiple limits of $30,000 available to satisfy their respective claims as such surviving heirs.

Because the defendants' answer is silent as to one contention of plaintiff, i.e., that the issue of single or multiple coverage limits was not arbitrable, that contention must be treated as having been admitted. (Witkin, *supra.*) As a consequence, the case presented for declaratory relief has two issues. One was whether Paul had suffered a separate and distinct bodily injury separate from the death of his wife so as to invoke the multiple injury limits, and the other was whether under the terms of the policy Paul and the decedent's children as heirs were "separately physically injured" because of the death of their wife and mother. Stated otherwise the latter issue noted was whether their loss of services of the decedent was a bodily injury under the terms of the policy.

This statement of the issues is confirmed by two of the trial court's findings. Because of certain language of the judgment we deem it necessary to quote these findings:

"8. Defendants, PAUL D. SCHABATKA, JACKIE LEE SHELTON and CONNIE LEE SHELTON, claim that they each have separate claims pursuant to the language of said insurance policy as survivors of the decedent, Helen Schabatka, thereby entitling them to claim under the 'multiple limits' coverage of this policy or a total of $30,000.00.

"9. Defendant, PAUL D. SCHABATKA, claims that he is entitled claim for bodily injury to himself in an amount to be set by an Arbitrator in

addition to his claim as a survivor of the decedent, Helen Schabatka, thereby entitling him to claim under the 'multiple limits' of the policy or a maximum of $30,000.00."

On the other hand the judgment contains the following:

"1. Defendant, PAUL D. SCHABATKA, does have a claim separate and apart from the survivorship claim for his own bodily injury arising out of the accident described above with said claim being limited to $15,000.00 and the amount of his damages under that claim to be set by arbitration. The question as to whether or not MR. SCHABATKA is entitled to submit such a claim is the proper question for this Court to decide, and is decided in that regard as set forth.

"2. The surviving husband and children of the decedent insured, Helen Schabatka, have separate personal claims under this policy entitling them to claim under the multiple limits of the policy for loss of their wife and mother, and the amounts of their recovery under this policy are for determination by arbitration pursuant to the applicable statute if the parties cannot reach agreement in that regard."

Taken together these two paragraphs of the judgment amount to an adjudication that there were at least two bodily injuries flowing from the negligence of the uninsured motorist. With this the posture of the judgment, we find it strange that it then proceeds to restrict Paul to the single injury limits of $15,000. Paragraph two refers to an entitlement to claim under the "multiple limits" of the policy, i.e., $30,000, but it is unlikely that the aggregate result intended is to say that $45,000 is subject to claim. On the other hand, if Paul suffered a separate bodily injury, there were multiple injuries, his and the death of his wife. The trial court's theory by which Paul would be limited to $15,000 for his own bodily injury as distinguished from that which is derivative upon his wife's death remains obscure. However, the defendants do not challenge this finding and because of the disposition of the appeal, that defect, if it be one, becomes inconsequential. We thus observe again that the principal issues to be resolved on appeal are those two embodied in paragraphs eight and nine of the findings already quoted and as already concisely stated.

Before taking up the task of resolving those issues, it is necessary to comment on the posture of the demands for arbitration because of their treatment by the pleadings. Until the California Supreme Court decision

in *Orpustan* v. *State Farm Mut. Auto. Ins. Co.,* 7 Cal.3d 988 [103 Cal.Rptr. 919, 500 P.2d 1119], there was some question about just what disputes arising under the uninsured motorist coverage statute were subject to arbitration. However, since that decision, any uncertainty in this area has been removed. That case was a hit-and-run situation, and even in that stringent context, the Supreme Court ruled that no less than jurisdiction to proceed by arbitration, i.e., on the question of whether contact had been made, was intended to be determined as a part of the arbitration procedure prescribed by Insurance Code section 11580.2.

In view of this holding, it would seem that plaintiff could not support its contention that the two issues of single or multiple coverage were not subject to arbitration. Even so, in a variety of factual situations it has been held that the right to arbitration in an uninsured motorist case can be waived. It was stated in *California State Auto. Assn.* v. *Blanford,* 4 Cal.App.3d 186 at page 189 [84 Cal.Rptr. 333] that "the right to arbitrate a dispute under the 'uninsured motorist' provisions of an automobile liability insurance policy may be waived. It is waived by the voluntary submission of such a dispute for decision by the court. [Citations]."

In the case at bench, the defendants by reason of the content of their answer to the complaint concurred in the voluntary submission of the multiple coverage issues to the court and have thus waived their right to have those issues decided by arbitration. As a result, those issues, as resolved on this appeal will be conclusively determined and will not be subject to arbitration.

■ Of the remaining contentions, we turn first to what we regard as the lesser of the defendants' contentions, namely: that as heirs they were separately injured because of the death of their wife and mother and hence can together make claim on the multiple limits of the policy. The policy language here pertinent states:

"The limit of liability for uninsured motorists coverage stated in the declarations as applicable to 'each person' is the limit of the company's liability for all damages, including damages for care or loss of services, because of bodily injury sustained by one person as the result of any one accident and, subject to the above provision respecting each person, the limit of liability stated in the declarations as applicable to 'each accident' is the total limit of the company's liability for all damages, including damages for care or loss of services, because of bodily injury sustained by two or more persons as the result of any one accident."

Based upon this language the defendants contend that the "loss of services" as described in the policy is tantamount to bodily injury. We have searched their brief in vain for argument in support of this contention. A fair interpretation of the language of the policy quoted is to characterize the loss of services as an element of damages flowing from a bodily injury.

A similar contention was made and carried into a judgment following arbitration in an uninsured motorist case appealed to this court. However, Mr. Justice Tamura in *Campbell* v. *Farmers Ins. Exch.*, 260 Cal.App.2d 105, at page 109 [67 Cal.Rptr. 175], made short shrift of such contention in reversing the trial court's judgment confirming the award in arbitration; he observes ". . . where only one person was killed in an accident, the policy limit was $10,000 [the single injury limit] regardless of the number of heirs damaged."[1]

As part of the Financial Responsibility Law, Vehicle Code section 16056 sets limits of $15,000 "because of bodily injury to or death of one person in any one accident" or $30,000 "because of bodily injury to or death of two or more persons in any one accident."

The insurance policy here limits recovery to $15,000 "for all damages, including damages for care or loss of services, because of bodily injury sustained by one person as the result of one accident," or to $30,000 "for all damages including damages for care or loss of services because of bodily injury sustained by two or more persons as the result of any one accident." Thus, the terms of the policy are consistent with the statute invoked by reference thereto in Insurance Code section 11580.2, and we see it as clear that under the law and the terms of the policy the loss of care and services of decedent by the defendants is not a bodily injury. If there were some ambiguity in the language of the policy to which defendants had directed us, we might have reached a different result; however, we have been directed to none and found none from our own scrutiny of the policy.

---

[1] The pertinent language of the policy in *Campbell* as quoted in the opinion reads, "The limits of the Company's liability under this Part II shall be $10,000 on account of bodily injury sustained by one insured as a result of any one accident and, subject to the above provision respecting one insured, shall be $20,000 on account of bodily injury sustained by two or more insureds as the result of any one accident. [¶] The insurance afforded by this Part II applies separately to each insured, but the inclusion herein of more than one insured shall not increase the limits of the Company's liability." This language is substantially the same in its legal effect as the pertinent language contained in the policy under interpretation here.

Respondents cite *Employers Cas. Ins. Co.* v. *Foust,* 29 Cal.App.3d 382 [105 Cal.Rptr. 505], as supporting the proposition that loss of care and services constitutes "bodily injury." In so doing they have missed the mark. That case held no such thing and will be further considered in the course of this opinion.

Therefore, we hold because of the one bodily injury, the death of Mrs. Schabatka, that the respondents each suffered damages in the form of the loss of care and services of their wife and mother and that they are entitled to claim an aggregate of up to $15,000 in damages under the single injury limits of the subject policy. We so hold because, as appears from our resolution below of the more important contention made by Paul, there was no other "bodily injury" suffered by anyone as a result of this one accident.

■ Turning to this contention, in terms of the plaintiff's statement of the issue, it is urged that Paul was not an "insured" under either Insurance Code section 11580.2 or under the terms of the policy. However, we regard the basic issue as framed by the pleadings to be whether the alleged bodily injury claimed to have been suffered by Paul is one which is cognizable under the law or the policy, for certainly Paul, in a general sense, at the time he purchased the policy was and remained an insured to the extent of the risks that the policy covered. We see the key language of the statute and of the policy to be interpreted as "shall be *legally entitled* to recover as damages . . ." (Italics added.)

Here, the pertinent and insuring language of the plaintiff's policy reads:

"To pay all sums which the insured or his legal representative shall be *legally entitled* to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called 'bodily injury,' sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile;. . ." (Italics added.)

The defendants have further relied upon our decision in *Employers Cas. Ins. Co.* v. *Foust, supra,* 29 Cal.App.3d 382, in arriving at their position in the instant case that Paul can urge his own separate bodily injury claim, i.e., that he is "legally entitled," and thus able to make his own demand upon the multiple-injury limits of the plaintiff's policy.

They have not correctly read and applied *Foust.* We have carefully reviewed the record in the *Foust* case, and here state that it decided only, in the circumstances there involved, that physical injuries resulting from emotional distress were compensable as "bodily injury" under the terms of the insurance policy presented for interpretation in that case.[2]

Similarly at issue in *Foust* was whether single or multiple limits of the policy were subject to claim. The infant David Foust was struck while a pedestrian in a crosswalk and seriously injured. That was bodily injury number one. His mother saw her son run down and suffered emotional distress leading to physical injury. The issue then was whether this was bodily injury number two. Because of the Supreme Court holding in *Dillon* v. *Legg,* 68 Cal.2d 728 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316], we could only come to the conclusion that it was. Such a conclusion resolved the dispute as to whether the multiple limits of the policy were subject to claim; they were.

There was a third bodily injury in *Foust* alleged to have been suffered by David's father who heard about the accident some 10 minutes after it happened. Although the findings state that the father suffered emotional distress resulting in physical injuries, the Fousts' brief did not address itself to the issue of the father's proximity to the accident. The issue argued and disposed of on that appeal was whether emotional distress resulting in physical injury amounted to "bodily injury" under the policy so as to enable the Foust family to reach the multiple limits of the policy. Because the mother was at the scene and therefore within the formula set out in *Dillon* (discussed hereafter), it was unnecessary to the decision in *Foust* to deal with the question of whether the father in later arbitration would be "legally entitled" to recover any damages. That issue is now squarely presented for decision.

A careful reading of Mr. Justice Tobriner's language in *Dillon* can yield no other conclusion than that Paul is not "legally entitled" to recover under the terms of this policy. Mr. Justice Tobriner comes out forthrightly and declares what we have for years conceded as implicit in trying to decide tort cases, as follows:

"We turn then to an analysis of the concept of duty, which, as we have stated, has furnished the ground for the rejection of such claims as the instant one. Normally the simple facts of plaintiff's complaint would

---

[2]The charging language in the policy in *Foust* is identical to that in the plaintiff's policy as already quoted.

establish a cause of action: the complaint alleges that defendant drove his car (1) negligently, as a (2) proximate result of which plaintiff suffered (3) physical injury. Proof of these facts to a jury leads to recovery in damages; indeed, such a showing represents a classic example of the type of accident with which the law of negligence has been designed to deal.

"The assertion that liability must nevertheless be denied because defendant bears no 'duty' to plaintiff 'begs the essential question—whether the plaintiff's interests are entitled to legal protection against the defendant's conduct. . . . It [duty] is a shorthand statement of a conclusion, rather than an aid to analysis in itself. . . . But it should be recognized that "duty" is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.' (Prosser, Law of Torts, *supra*, at pp. 332-333.)

"The history of the concept of duty in itself discloses that it is not an old and deep-rooted doctrine but a legal device of the latter half of the nineteenth century designed to curtail the feared propensities of juries toward liberal awards. 'It must not be forgotten that "duty" got into our law for the very purpose of combating what was then feared to be a dangerous delusion (perhaps especially prevalent among juries imbued with popular notions of fairness untempered by paramount judicial policy), viz., that the law might countenance legal redress for all foreseeable harm.' (Fleming, An Introduction to the Law of Torts (1967) p. 47.)" (*Dillon* v. *Legg,* 68 Cal.2d 728, 733 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316].)

Continuing at page 738, he says:

"In sum, the application of tort law can never be a matter of mathematical precision. In terms of characterizing conduct as tortious and matching a money award to the injury suffered as well as in fixing the extent of injury, the process cannot be perfect. Undoubtedly, ever since the ancient case of the tavern-keeper's wife who successfully avoided the hatchet cast by an irate customer [citation], defendants have argued that plaintiffs' claims of injury from emotional trauma might well be fraudulent. Yet we cannot let the difficulties of adjudication frustrate the principle that there be a remedy for every substantial wrong."

Without getting into a lengthy discourse on the evolution of the scope of liability, i.e., the extent of duty in such cases, it is enough to

summarize that the courts have moved from requiring impact, to zone-of-danger, and then in *Dillon* to a point which includes the eyewitness family member who suffers emotional distress and consequent injury because of seeing a loved one killed or maimed.

There was a vigorous dissent in *Dillon* by Mr. Justice Burke, and Chief Justice Traynor dissented, stating that the result should have been governed by *Amaya* v. *Home Ice, Fuel & Supply Co.,* 59 Cal.2d 295 [29 Cal.Rptr. 33, 379 P.2d 513]. This four-to-three decision was everywhere recognized as a significant advance (or regression in the view of some) in the field of tort liability. Not the least of these was Mr. Justice Tobriner himself who seemed to feel the heat of the minority opposition and very carefully circumscribed the new salient. It is that circumscription which governs here.

In allowing recovery to the mother in *Dillon* he stated at page 739:

"The alleged inability to fix definitions for recovery on the different facts of future cases does not justify the denial of recovery on the specific facts of the instant case; in any event, *proper guidelines can indicate the extent of liability for such future cases.*" (Italics added.)

These guidelines are then set forth on page 740:

"In determining, in such a case, whether defendant should reasonably foresee the injury to plaintiff, or, in other terminology, whether defendant owes plaintiff a duty of due care, the courts will take into account such factors as the following: (1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it. (2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence. (3) Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship."

Using these guidelines then, Paul's claim must fail because of his absence from the scene. It may well be, upon the presentation of this particular privity issue in some later case, that the Supreme Court may choose to extend the concept of duty or foreseeable risk to the surviving spouse who suffers emotional distress and resulting bodily injury because of learning of the other spouse's death or injury at the hands of a careless driver. Such an excursion is not one for us to take; we choose to read the

language of *Dillon* v. *Legg, supra,* as meaning exactly what it says. Our interpretation has the support of at least one writer[3] in the field who opines that *Dillon* is not a departure from the traditional "privity" approach in tort cases as distinguished from the "status" test as exemplified by *Barrera* v. *State Farm Mut. Automobile Ins. Co.,* 71 Cal.2d 659 [79 Cal.Rptr. 106, 456 P.2d 674] and *Elmore* v. *American Motors Corp.,* 70 Cal.2d 578 [75 Cal.Rptr. 652, 451 P.2d 84]. Stated otherwise, even given this departure by *Dillon* from previous limits, *Dillon* yet accepted the theory of *Amaya,* while differing only in its application and result. With this then the rationale, it could not possibly follow that a spouse absent from the scene could claim that degree of privity to the distressful event under the *Dillon* test which would lead the Supreme Court to find him within the risk intended to be insured against by the plaintiff's policy in this case.

The result we have reached above on the privity issue is in keeping with decisions reached on the same issue in other districts. (See *Deboe* v. *Horn,* 16 Cal.App.3d 221 [94 Cal.Rptr. 77] and *Powers* v. *Sissoev,* 39 Cal.App.3d 865 [114 Cal.Rptr. 868], from the Second District, and *Jansen* v. *Children's Hospital Medical Center,* 31 Cal.App.3d 22 [106 Cal.Rptr. 883], from the First District.) These were direct liability and not uninsured motorist cases, but the legal concept involved was the same as urged here by Paul. In our own decision in *Archibald* v. *Braverman,* 275 Cal.App.2d 253 [79 Cal.Rptr. 723], we concluded that a mother's arrival within moments at the scene of her son's injuries suffered in an explosion was sufficiently "contemporaneous" with the tortious act leading to the explosion to meet the *Dillon* test. However, the case at bench does not.

To summarize our conclusions then, they are that the defendants as heirs and survivors of Helen Schabatka can properly present their claims and demands for arbitration under the policy and that the single-injury policy limits of $15,000 only are subject to such claim; that the defendant Paul Schabatka has no claim for recovery based on alleged bodily injury arising from his emotional distress.

The judgment is reversed.

Gardner, P. J., and Kaufman, J., concurred.

---

[3]Rintala, *Foreword: "Status" Concepts in the Law of Torts* (1970) 58 Cal.L.Rev. 80.