[Civ. No. 48464. Second Dist., Div. Two. June 2, 1977.]

FRAZIER, DAME, DOHERTY, PARRISH & HANAWALT, Plaintiff and Appellant, v.
BOCCARDO, BLUM, LULL, NILAND, TEERLINK & BELL et al., Defendants and Respondents.

332

334

**COUNSEL**

Heily, Blase, Ellison & Wellcome, DeWitt F. Blase, Edward L. Lascher, Jeffrey D. Jennings and Wendy C. Wilner for Plaintiff and Appellant.

Boccardo, Blum, Lull, Niland & Bell, Stanley A. Ibler, Jr., Edward J. Niland, Don Dewberry, Donald C. Fesler and James E. Dixon for Defendants and Respondents.

## OPINION

COMPTON, J.—In an action for tortious interference with contractual relations brought by a firm of attorneys (hereafter Frazier) against another law firm (hereafter Boccardo), an insurance company and an investigator, the trial court entered a summary judgment in favor of defendants. This appeal ensued.

After hearing oral argument we filed an opinion on April 13, 1977, affirming the summary judgment as to all defendants although in that opinion we expressed our disapproval of the conduct of a member of the Boccardo firm and suggested the relationship between Boccardo and investigator McIntyre was suspect.

Both plaintiffs and Boccardo for divergent reasons petitioned this court for a rehearing which we granted. Upon re-examination we have concluded that as to Boccardo and McIntyre our previous decision was in error and that as to those two defendants there are sufficient triable issues of fact to warrant denial of summary judgment. Consequently as to those defendants we reverse.

One Clarence Johnson was injured on a construction site during the course of his employment. Defendant Great American Insurance Company (Great American) was the workers' compensation carrier for Johnson's employer. The employer notified Great American of the accident who in turn contacted defendant McIntyre.

Great American through its employee David Ehrhart instructed McIntyre to investigate Johnson's action with an eye to determining whether there were any potential third party defendants and if so to make sure that the Johnsons engaged the services of an attorney to press such action.

In the meanwhile Vicki Johnson, wife of the injured workman, had contacted Frazier and talked to attorney James Doherty. Mrs. Johnson

had previously been represented by that firm in a divorce matter. On April 10, 1972, Mrs. Johnson entered into a contingent fee contract with Doherty. He advised her that in addition to the workers' compensation claim it appeared that a successful action could be maintained against third party defendants. He explained that the firm would handle the third party action on a contingent fee basis and Mrs. Johnson agreed. He advised her that the fee on the compensation claim would be set by the Workers' Compensation Appeals Board.

Mrs. Johnson signed an application for workers' compensation benefits and signed forms authorizing release of information concerning the accident to the Frazier firm.

Subsequently McIntyre contacted Mrs. Johnson and following that contact Mrs. Johnson engaged the Boccardo firm to represent her on a contingent fee basis in proceedings against third parties. She also employed that firm to handle the workers' compensation claim. The case was finally settled against the third parties for a sum in excess of $1 million.

McIntyre's declaration filed in support of the motion for summary judgment states that in his conversation with Mrs. Johnson he asked her if she had an attorney. She told him that she had not retained any lawyer. He suggested to her that to protect her rights she should obtain the services of an attorney who specialized in personal injury cases. She asked him whether he knew of any law firms which specialized in personal injury cases. In response, he named five firms, one of which was Boccardo. He told her that Boccardo was a good firm, that he knew one of its attorneys, and that he had worked on a case in which Boccardo had recovered a substantial judgment.

McIntyre, after extolling the virtues of Boccardo, told Mrs. Johnson that he knew nothing of plaintiff's firm. The record discloses that during the period of May 1972 to May 1974, McIntyre received $9,800 from Boccardo for "investigative" services. McIntyre's contact with Mrs. Johnson was shortly after April 17, 1972. Mrs. Johnson retained the Boccardo firm in May of 1972.

Mrs. Johnson's employment of Boccardo occurred when a partner in that firm, Stanley Bell, traveled from his offices in San Jose to Santa

Barbara to meet with her. Bell told Mrs. Johnson, among other things, that if she needed money the Boccardo firm would advance it to her.

Mrs. Johnson's declaration states that she decided to file a lawsuit for her husband's injuries after discussing the matter with friends and relatives. She says that her decision to hire Boccardo was her own; that she was not persuaded or influenced by any of the defendants in this action.

On the other hand plaintiff produced declarations of two members of their firm recounting conversations with Mrs. Johnson in which she stated that McIntyre had told her that the Boccardo firm could get her more money than plaintiff and that she would be "better off" if she were represented by Boccardo.

The evidence strongly supports the inference that Bell, in spite of his own denial, knew, at the time he "signed up" Mrs. Johnson, that she was represented by plaintiff. He subsequently corresponded with plaintiff, advising plaintiff that Boccardo would handle both the third party actions and the workers' compensation claim. A substitution of attorneys was subsequently filed.

Bell's action in contacting Mrs. Johnson and executing the contingent fee contract without any notification to or discussion with plaintiff is the conduct which we in our previous opinion condemned as reprehensible and referred to the State Bar.[1]

As pleaded this case sounds in interference of contract.

■ "The great weight of authority is that the tort of interference with contract is merely a species of the broader tort of interference with prospective economic advantage. [Citation.] Thus while the elements of the two actions are similar, the existence of a legally binding agreement is not a *sine qua non* to the maintenance of a suit based on the inclusive wrong." (*Buckaloo* v. *Johnson,* 14 Cal.3d 815, 823 [122 Cal.Rptr. 745, 537 P.2d 865].) ■ Contractual relations between attorneys and their

---

[1] Rules of Professional Conduct, rule 7-103 (formerly rule 12) provides: "A member of the State Bar shall not communicate directly or indirectly with a party whom he knows to be represented by counsel upon a subject of controversy, without the express consent of such counsel. This rule shall not apply to communications with a public officer, board, committee or body."

clients are entitled to the same protection afforded other business relations. (*Herron* v. *State Farm Mutual Ins. Co.*, 56 Cal.2d 202, 205 [14 Cal.Rptr. 294, 363 P.2d 310].)

■ In the attorney-client context, the elements of intentional interference with prospective economic advantage are: (1) an economic relationship between attorney and client containing the probability of future economic benefit to the attorney, (2) knowledge by the defendant of the existence of the relationship, (3) intentional acts on the part of the defendant designed to disrupt the relationship, (4) actual disruption of the relationship, and (5) damages to the plaintiff proximately caused by the acts of the defendant. (Cf. *Buckaloo* v. *Johnson, supra.*) ■ Confined to an action for interference with a contractual relationship, the elements are substantially similar. The defendant must have had knowledge of the contract and must have intended to induce a breach thereof. (*Weiss* v. *Marcus*, 51 Cal.App.3d 590 [124 Cal.Rptr. 297].)

■ Plaintiff's case rests on the theory that McIntyre was an agent of Great American and Boccardo and that his conduct and knowledge can be imputed to these latter two defendants. Additionally plaintiff contends that Boccardo independently committed the tort in executing the contingent fee contract with Mrs. Johnson knowing that plaintiff already represented her.

■ A summary judgment is proper if the action has no merit and there is no triable issue of fact. (*Lincoln Sav. & Loan Assn.* v. *Title Ins. & Trust Co.*, 46 Cal.App.3d 493 [120 Cal.Rptr. 219].) Issue finding rather than issue determination is the pivot on which summary judgment law turns. (*D. E. Sanford Co.* v. *Cory Glass Etc. Co.*, 85 Cal.App.2d 724 [194 P.2d 127].) ■ If the defendants' declarations in support of a motion for summary judgment establish a complete defense to plaintiff's action or demonstrate an absence of an essential element of plaintiff's case, and the plaintiff's declaration in reply does not show that a triable issue of fact with respect to that defense or that essential element exists, no amount of factual conflicts upon other aspects of the case will affect the result and the motion for summary judgment should be granted. (*Smith* v. *Southern Pacific Co.*, 222 Cal.App.2d 728, 733 [35 Cal.Rptr. 575].)

■ "The act of inducing the breach must be an intentional one. If the actor had no knowledge of the existence of the contract or his actions

were not intended to induce a breach, he cannot be held liable though an actual breach results from his lawful and proper acts. (Rest., Torts, sec. 766, comment e; . . . .)" (*Imperial Ice Co. v. Rossier,* 18 Cal.2d 33, at p. 37 [112 P.2d 631].)

■ While "It has long been recognized in this state that the client's power to discharge an attorney, with or without cause, is absolute (Code Civ. Proc., § 284)," (*Fracasse v. Brent,* 6 Cal.3d 784, at p. 790 [100 Cal.Rptr. 385, 494 P.2d 9]), it is tortious for one, especially another attorney, to improperly induce the exercise of that power.

■ We recognize the sensitivity of this type of case and the difficulty of proof. The satisfied client is not likely to be disposed in an action by the discharged attorney to testify adversely to the attorney who success-fully represented him. However, the proof of this tort, as any other, can be made by the use of circumstantial evidence. (Cf. *Dougherty v. Lee,* 74 Cal.App.2d 132 [168 P.2d 54]; *Ybarra v. Spangard,* 93 Cal.App.2d 43 [208 P.2d 445]; *Sanders v. MacFarlane's Candies,* 119 Cal.App.2d 497 [259 P.2d 1010].)

■ Since this case reaches us on appeal from a summary judgment in favor of defendants we need only determine whether there is a possibility that plaintiff may be able to establish its case. (*People v. Rath Packing Co.,* 44 Cal.App.3d 56 [118 Cal.Rptr. 438].) ■ When the moving party is the defendant the latter must conclusively negate a necessary element of the plaintiff's case and demonstrate that under no hypothesis is there a material factual issue which requires the process of a trial. (*T. M. Cobb Co. v. County of Los Angeles,* 16 Cal.3d 606 [128 Cal.Rptr. 655, 547 P.2d 431]; *Tool Research & Engineering Corp. v. Henigson,* 46 Cal.App.3d 675 [120 Cal.Rptr. 291].)

■ We need not here decide the evidentiary ramifications of the conflicting statements of Mrs. Johnson and the evidence impeaching of the declarations of McIntyre and Bell. Plaintiff has demonstrated that there are triable issues of fact as to whether Bell and McIntyre did improperly induce Mrs. Johnson's change of representation and whether McIntyre in fact acted as Boccardo's agent in influencing that choice. The evidence presented to the trial court permits of an inference that such was the case. This is sufficient for the denial of the motion for summary judgment. (See Code Civ. Proc., § 437c.)

■ The position of defendant Great American is another matter. The undisputed role of Great American was simply that of employing McIntyre as an independent contractor to investigate the case and insofar as possible to insure that claims against third parties were developed and pursued. McIntyre's conduct of "capping" for a particular law firm, if that is what he did, was beyond the scope of his relationship with Great American and could not, under the evidence presented here, subject Great American to liability therefor under any theory of vicarious liability.

The judgment as to McIntyre and Boccardo is reversed. The judgment as to Great American is affirmed. Great American shall recover costs of this appeal from plaintiff. Boccardo is to bear the remaining costs.

Fleming, Acting P. J., and Beach, J., concurred.

A petition for a rehearing was denied June 22, 1977, and respondents petitions for a hearing by the Supreme Court were denied July 28, 1977. Mosk, J., was of the opinion that the petitions should be granted.