[Civ. No. 27751. Fourth Dist., Div. Two. Aug. 30, 1982.]

DRAPER MORTUARY et al., Petitioners, v.
THE SUPERIOR COURT OF SAN BERNARDINO COUNTY,
Respondent;
ROY C. THOMAS, Real Party in Interest.

COUNSEL

Bonelli, Heib, Fuchs & O'Neal, John G. Bonelli and Marc J. Wodin for Petitioners.

No appearance for Respondent.

William F. Batchelor for Real Party in Interest.

OPINION

**TROTTER, J.**—Petition for writ of mandate after the denial of defendants' motion for summary judgment.

Plaintiff in a first amended complaint stated two causes of action against defendants, one sounding in negligence and the other in breach of an oral contract. Defendants' motion for summary judgment was denied as to the negligence cause of action and a petition for writ of mandate or prohibition is now before us. We granted an alternative writ but refuse to issue the permanent writ.

### FACTS

Plaintiff's first amended complaint filed on April 9, 1981, states that defendants are engaged in the business of maintaining an establishment

for the preparation and transportation or disposition of and for the care of dead human bodies. On November 27, 1979, plaintiff gave to defendants the temporary custody, care and possession of plaintiff's deceased wife's remains. Defendants placed decedent's remains in their chapel and negligently interfered with the right of plaintiff to dispose of and to the remains of the decedent by failing to provide adequate protection for decedent's remains. The defendants are alleged to have been negligent in that they failed to lock the door to the chapel where the decedent's remains were placed and thus allowed access to the decedent's remains by unauthorized persons. On that same date defendant Gill entered the chapel through the unlocked door and tipped the coffin off its stand, removed the decedent's clothing and sexually assaulted the decedent's remains. Other allegations were made that defendants knew or should have known that the failure to provide a secure facility would have allowed the desecration in question since prior to November 27, 1979, other persons had committed similar acts. Defendants' motion for summary judgment, including affidavits and declarations established that prior to the date in question no remains at their mortuary had ever been sexually molested or abused. Based on this record, the trial court granted the motion as to the cause of action based upon breach of an oral contract for reasons not before us but denied it as to the first cause of action which alleged negligence on the part of the defendants.

## DISCUSSION

"It is elementary that summary judgment is a drastic measure which deprives the losing party of trial on the merits. It therefore may not be invoked unless it is clear from the affidavits (or declarations) filed in connection with the motion that there are no triable issues of fact. (Code Civ. Proc., § 437c.) Doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion. (*Lacy* v. *Laurentide Finance Corp.*, 28 Cal.App.3d 251, 256 [104 Cal.Rptr. 547]; *Crescenta Valley Moose Lodge* v. *Bunt*, 8 Cal.App.3d 682, 686 [87 Cal.Rptr. 428]; *Rafeiro* v. *American Employers' Ins. Co.*, 5 Cal.App.3d 799, 804 [85 Cal.Rptr. 701].)" (*People* ex rel. *Riles* v. *Windsor University* (1977) 71 Cal.App.3d 326, 331 [139 Cal.Rptr. 378].)

■ It is now well established in California that a party moving for summary judgment must establish that the opposing party's action or any portion thereof is without merit. (*Kelleher* v. *Empresa Hondurena De Vapores S.A.* (1976) 57 Cal.App.3d 52 [129 Cal.Rptr. 32].)

It is further clear that if the moving party fails to sustain its burden that the claims are made entirely without merit on any legal theory, the adverse party is not required to demonstrate the validity of the claims by the filing of counterdeclarations or affidavits. In *Frazier, Dame, Doherty, Parrish & Hanawalt* v. *Boccardo, Blum, Lull, Niland, Teerlink & Bell* (1977) 70 Cal.App.3d 331, at page 339 [138 Cal.Rptr. 670], the court stated: "When the moving party is the defendant the latter must conclusively negate a necessary element of the plaintiff's case and demonstrate that under no hypothesis is there a material factual issue which requires the process of a trial." And in *Murphy* v. *Allstate Ins. Co.* (1978) 83 Cal.App.3d 38 [147 Cal.Rptr. 565], the court reinforced the well-known rule, stating "the party moving for summary judgment has the burden of showing by declarations or affidavits setting forth facts admissible as evidence in a trial that the claims or defenses of the adverse party are entirely without merit on any legal theory and that if the moving party's showing is insufficient, the adverse party is not required to demonstrate the validity of his claims or defenses or even to file counterdeclarations or counteraffidavits." (*Id.*, at p. 41.)

■ Petitioners urge that they owe no duty to plaintiff in the instant case, since plaintiff was unable to establish the existence of either prior similar acts on behalf of a third party or some knowledge on behalf of petitioners that the third party would so act whether or not he had ever done so before. They allege that absent either of the above no duty of care exists running from petitioners to plaintiff. We disagree.

"The assertion that liability must nevertheless be denied because defendant bears no 'duty' to plaintiff 'begs the essential question whether the plaintiff's interests are entitled to legal protection against the defendant's conduct.... It [duty] is a shorthand statement of a conclusion, rather than an aid to analysis in itself.... But it should be recognized that "duty" is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.' (Prosser, Law of Torts, ... at pp. 332-333.)" (*Dillon* v. *Legg* (1968) 68 Cal.2d 728, 734 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316].)

"Any number of considerations may justify the imposition of duty in particular circumstances, including the guidance of history, our continually refined concepts of morals and justice, the convenience of the rule, and social judgment as to where the loss should fall." (*Weirum* v. *RKO*

*General, Inc.* (1975) 15 Cal.3d 40, 46 [123 Cal.Rptr. 468, 539 P.2d 36]; Prosser, *Palsgraf Revisited* (1953) 52 Mich.L.Rev. 1, 15.)

Petitioners' reliance on cases that found no duty because of acts committed by third parties and therefore not foreseeable is misplaced. That limited view of duty is based upon cases wherein no special relationship existed and where the defendant did not undertake to care for or take custody of plaintiffs and therefore no duty of care was imposed to control the conduct of third persons. However, it has long been held that a special relationship between parties may give rise to a duty which would not otherwise be imposed. "Although, as we have stated above, under the common law, as a general rule, one person owed no duty to control the conduct of another (*Richards* v. *Stanley* (1954) 43 Cal.2d 60, 65 [271 P.2d 23]; *Wright* v. *Arcade School Dist.* (1964) 230 Cal.App.2d 272, 277 [40 Cal.Rptr. 812]; Rest.2d Torts (1965) § 315), nor to warn those endangered by such conduct (Rest.2d Torts, *supra*, § 314, com. c.; Prosser, Law of Torts (4th ed. 1971) § 56, p. 341), the courts have carved out an exception to this rule in cases in which the defendant stands in some special relationship to either the person whose conduct needs to be controlled or in a relationship to the foreseeable victim of that conduct (see Rest.2d Torts, *supra*, §§ 315-320). Applying this exception to the present case, we note that a relationship of defendant therapists to either Tatiana or Poddar will suffice to establish a duty of care; as explained in section 315 of the Restatement Second of Torts, a duty of care may arise from either '(a) a special relation ... between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or (b) a special relation ... *between the actor and the other which gives to the other a right of protection.*'" (*Tarasoff* v. *Regents of University of California* (1976) 17 Cal.3d 425, 435 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166], fn. omitted, italics supplied.)

Thus, courts have increased the number of instances in which affirmative duties are imposed by expanding the list of special relationships which justify a departure from the common law rule. (See Prosser, Law of Torts (4th ed. 1971) § 56, pp. 348-350.) The basis for analysis of whether or not there is a duty is the relationship of the parties. For if the conduct of the one who is to be charged with the duty brings him into a human relationship with another where social policy requires that either affirmative action or precaution be taken on his part to avoid harm, then a duty to act or to take the precaution should be imposed by law. Justice Cardozo, more than half a century ago, clearly analyzed

the problem by saying: "Given a relation involving in its existence a duty of care irrespective of a contract, a tort may result as well from acts of omission as of commission in the fulfillment of the duty thus recognized by law.... What we need to know is not so much the conduct to be avoided when the relation and its attendant duty are established as existing. What we need to know is the conduct that engenders the relation. It is here that the formula, however incomplete, has its value and significance." (*H. R. Moch Co., Inc.* v. *Rensselaer Water Co.* (1928) 247 N.Y. 160, 167 [159 N.E. 896, 898, 62 A.L.R. 1199].)

The facts of the instant case compel the imposition of duty. Once a mortuary such as petitioners' herein undertakes to accept the care, custody and control of the remains, a duty of care must be found running to the members of decedent's bereaved family. Whether or not that duty has been breached by the omission of petitioners in failing to lock its chapel door is a question of fact for the jury. While a duty is a question of law, foreseeability is a question of fact for the jury. (*Weirum* v. *RKO General, Inc., supra,* 15 Cal.3d 40, 46; *Wright* v. *Arcade School Dist.* (1964) 230 Cal.App.2d 272, 277 [40 Cal.Rptr. 812]. We therefore affirm the trial court's denial of a motion for summary judgment.

Writ denied; alternative writ discharged.

Morris, P. J., concurred.

**McDANIEL, J.**—I respectfully dissent.

In the trial court the petitioning defendants' motion for summary judgment was denied because the court perceived an issue of fact to be resolved. To the contrary, in my view, the case presents solely an issue of law, and the motion should have been granted. The trial court and the majority point to the issue of fact as being whether the defendants were negligent in failing to lock the door against the intruder.

However, implicit in characterizing the record as presenting an issue of fact is an underlying and prior *legal* determination that a *duty* devolved upon the defendants to exercise some measure of care in maintaining the security of the mortuary premises. It is in their perception of the duty here applicable that I disagree with my colleagues.

In undertaking to define such a duty, the majority first invokes *Dillon* v. *Legg* (1968) 68 Cal.2d 728 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316], which forthrightly conceded that "'[duty] is a short-hand statement of a [legal] conclusion, rather than an aid to analysis in itself ... [and that] "duty" is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.' (Prosser, Law of Torts, ... at pp. 332-333.)" (*Id.* at p. 734.)

This proposition provides a large area in which to maneuver, but I suggest that such maneuvering cannot properly ignore precedent, particularly where the result reached here boldly leaps beyond the ramparts which have heretofore marked the outer limits of duty in personal injury cases sounding in tort.

*Dillon* itself was also such a case of new outreach and extended duty to a mother who witnessed her child run down in a cross walk by a careless motorist. Although the mother was never in the zone of danger, she suffered physical symptoms of distress as the result of the experience. On these facts, for reasons of policy sufficient to the Supreme Court, it was held that the driver was bound to foresee that a child struck in a cross walk might well be attended by a family member on the curb who would experience his or her own physical trauma as a consequence of witnessing the child's agony.

In *Vanguard Ins. Co.* v. *Schabatka* (1975) 46 Cal.App.3d 887 [120 Cal.Rptr. 614], this court declined to extend any duty to a surviving husband for his own trauma in a case where his wife was killed in a cross walk in Buena Park, and where the husband was *not* present at the scene of the accident but only learned of his wife's death 15 minutes later. In doing so, we followed Justice Tobriner's carefully reasoned limitations upon further expansion of the concept of duty in circumstances of this kind. The *Dillon* guidelines clearly dictated the result in *Vanguard* and provide: "'In determining, in such a case, whether defendant should reasonably foresee the injury to plaintiff, or, in other terminology, whether defendant owes plaintiff a duty of due care, the courts will take into account such factors as the following: (1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it. (2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and con-

temporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence. (3) Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship.' [Quoting *Dillon* v. *Legg, supra*, 68 Cal.2d 728, 740.]" (*Vanguard Ins. Co.* v. *Schabatka, supra*, 46 Cal.App.3d 887, 898.)

Turning to the facts of the case now before us, it is apparent that they are on all fours with *Vanguard.* Mr. Thomas, the plaintiff, was not present when his deceased wife's remains were desecrated. Without more, *Vanguard* should control, and once again in obedience, to the Tobriner guidelines, we should decline to extend the burden of liability for personal injuries into a new and uncharted area.

The majority's response to this is that there *is* something more, i.e., *a special relationship* between the surviving husband and the mortuary. They seize upon this as raising a duty without alluding to any policy reasons as to why this should be.

In doing so, the majority rejects out of hand a line of cases of which *7735 Hollywood Blvd. Venture* v. *Superior Court* (1981) 116 Cal.App. 3d 901 [172 Cal.Rptr. 528], is illustrative. In that case a special relationship existed between the defendant and plaintiff. They were landlord and tenant respectively. The plaintiff was raped by a third party intruder into her apartment. In the litigation against the defendant landlord which followed, the causation for the rape suffered by plaintiff was alleged to be the negligent failure of defendant to replace a burned out light bulb outside plaintiff's apartment.

In authorizing the issuance of a writ of mandate directing the trial court to sustain defendant's demurrer, the Court of Appeal held that there was no legal basis upon which to undertake a factual inquiry into negligence because a landlord has *no duty* to take precautions against attacks by third persons which he has no reason to anticipate. (*Id.* at p. 905.)

In the case before us the declarations and other items of evidence before the court at the time the motion for summary judgment was heard and considered demonstrated conclusively that nothing like this had ever happened at the mortuary and that nothing had ever come to the

attention of the defendants to suggest that such a regrettable event might occur.

The majority has seemingly attempted to distinguish between the types of relationship which do or do not call up a duty, doing so by pointing to cases where a duty has been imposed arguably because of the nature of the special relationship. Particularly, the majority quotes at length from *Tarasoff* v. *Regents of University of California* (1976) 17 Cal.3d 425 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166]. In that case, one for wrongful death, the plaintiffs were the parents of a victim killed by a person who had revealed to a therapist associated with the university that he, the former, intended to kill the victim. Thereafter, the therapist did not warn the victim, and the court held this to be a breach of duty in that there was a failure to protect the known victim from danger.

In the first place, wrongful death cases import a unique and separate right of action in the survivors quite apart from any right arising from the harm visited upon the victim. However, beyond that I find no difficulty in distinguishing *Tarasoff* from our facts here. In the former, the identity of the possible victim was known to the therapist; thus a high degree of foreseeability was present there to an extent not even remotely present here. While, for policy reasons, there can occasionally be a reluctance to impose duty even in the face of foreseeability, it has never occurred that there has been duty imposed *without* foreseeability.

That is the crux of this case. It cannot be fairly argued that it was any more foreseeable that an intruder would enter the defendant mortuary than it was that the rapist would enter the apartment in *Hollywood Blvd.* In the latter case, where there was even a surviving victim of the crime, it was yet held that no duty existed in favor of a severely injured plaintiff in the absence of defendant's knowledge of the third party criminal's presence in the area together with further knowledge of his propensity to behave as he finally did.

This is the present state of the law in this state, and the majority has chosen to ignore it in a case where the plaintiff is even one step *removed* from the scene of the crime, this notwithstanding that *Vanguard*, in following the *Dillon* guidelines, declined to extend duty to a point so far beyond basic tort rationale. If this be done on the pretext

of a so-called special relationship, even where foreseeability is entirely lacking, the quantum leap is in manifest derogation of both precedent and logic.

I would order issuance of the writ as prayed for.

Petitioners' application for a hearing by the Supreme Court was denied October 27, 1982.