**Donald DAVIS, Plaintiff-Appellee,**

v.

**PARTENREEDEREI M.S.
NORMANNIA,**
**Defendant-Appellant.**

**No. 79–4273.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 11, 1980.

Decided Sept. 28, 1981.

John A. Flynn, Graham & James, San Francisco, Cal., for defendant-appellant.

John D. Mahoney, Cooper, White & Cooper, San Francisco, Cal., for plaintiff-appellee.

Before FLETCHER and FERGUSON, Circuit Judges, and GRANT,* Senior District Judge.

GRANT, Senior District Judge.

This is an appeal from a suit brought by a longshoreman against a shipowner pursuant to the Longshoreman's and Harbor Worker's Compensation Act (LHWCA) as amended in 1972,[1] 33 U.S.C. § 905(b).[2] In reviewing the judgment entered in favor of the longshoreman, we need to consider the applicable standard of care owed by a shipowner to a longshoreman who is engaged in unloading cargo from a ship. The standard of care owed in such a situation is set out in *Scindia Steam Navigation Co. v. Santos*, —— U.S. ——, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981), affirming in part and amending in part, *Santos v. Scindia Steam Navigation Co.*, 598 F.2d 480, 485 (9th Cir. 1979). Based upon the standards announced in those decisions, we now affirm the court below.

*Facts*

The plaintiff-appellee, Donald Davis, was a "supercargo" longshoreman employed by an independent stevedore firm, Crescent Wharf and Warehouse Company in Rich-

---

* Senior District Judge Robert A. Grant of the United States District Court for the Northern District of Indiana, sitting by designation.

1. Pub.L. 92–576, 86 Stat. 1251, amending 33 U.S.C. §§ 901–950.

2. 33 U.S.C. § 905(b) states:
    In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party.... The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred.

mond, California. Davis was injured while unloading the *M/S Normannia*, owned and operated by the Partenreederei M.S. Normannia (Shipowner). The *Normannia's* gangway is of an apparently unique design, permitting it to pivot and swing through a 180 degree arc. This allowed the end of the gangway to be placed at any angle from the ship's side. On the evening preceding the accident, the ship's crew had placed the dockside end of the gangway on the dock opposite Hold 6, which was to be discharged. The gangway was roughly parallel to the ship. The gangway could have been moved at any point by either the ship's officers or the stevedore supervisor, Captain Tillisch.

Much of the factual controversy at trial related to the proximity of the gangway's end to the point where the cargo, (automobiles and light trucks), was being unloaded. These vehicles were swung from the ship's hold to the dock by a "finger bridle," a device which requires a crew of four persons on the dock to unhook the "fingers" from each wheel after steadying the vehicle's descent to the dock. Apparently these autos were landing on the dock 10 feet from the end of the gangway, although some estimates placed them even closer, at 5 or 6 feet. At a point very close in time to the accident, the stevedores switched unloading gear and began using a "cage" to lower the vehicles to the dock. The cage is a metal frame onto which the vehicle is driven, then lowered to the dock where one person, a driver, removes the vehicle from the landing area. The cage may require more space on the dock than the "fingers," and the defendant speculates that the cage may have been landing as close as three feet from the gangway. The shipowner contends that the act of shortening the distance from gangway to landing point substantially increased the danger to persons using the gangway. A careful reading of the record, however, does not substantiate the claim that the distance decreased with the use of the cage, nor does it prove that this change, if any, increased the danger. Two expert witnesses disagreed on this subject; the plaintiff's expert testified that

cargo landing three feet away certainly was dangerous, while a distance of ten feet might not have been; the defendant's expert, applying OSHA Regulations as well as his expertise, said either distance was dangerous. Davis, unaware of the danger involved, was struck in the back by a truck and severely injured as he walked off the gangway. Davis remains permanently disabled due to the injuries sustained in this accident.

Ship's Officer Burkhardt was on duty that morning. He had observed the relatively close proximity of the gangway to the landing point prior to the accident, and generally appreciated the danger this posed to persons using the gangway. In other ports he had seen gangways moved for safety reasons. Despite this, Officer Burkhardt testified that the placement of *Normannia's* gangway did not pose a danger, inasmuch as he presumed that the stevedore's skills made them aware of the problem. The shipowner's trial expert, however, stated that the ship's officers had a continued responsibility to correct the positioning of the gangway, even during the period that the cargo was being discharged. The stevedore superintendent also had the authority to move the gangway during the unloading operation. Although the highest ranking representatives of the stevedore company did not notice the danger before the accident, several longshoremen did, but failed to indicate this to their superior. A hatch tender, employed by the stevedore company to guard against this type of accident, failed to see Davis in the danger zone. Testimony indicated that it would have been extremely difficult for the hatch tender to see Davis in the cargo discharge area. Immediately after the accident, the gangway was moved to a position perpendicular to the vessel.

■ In February, 1979, a jury returned a verdict in Davis' favor in the amount of $350,000 for his claim against the shipowner. Pursuant to Fed.R.Civ.P. 49, the jury answered a special advisory verdict allocating the negligence of the three parties involved. Davis was found to have been 40%

negligent, the stevedore company 40% negligent, and the shipowner 20% negligent. Davis' award is, of course, reduced by his own negligence to $210,000. Following the principles of maritime law as interpreted by *Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256, 99 S.Ct. 2753, 61 L.Ed.2d 521 (1979), the shipowner is liable for the remaining balance of the award, including that portion of the negligence and judgment attributable to the stevedore. *Id.* This is balanced in part by the 1972 amendments, *supra*, which allow the injured longshoreman to sue the vessel only on the basis of negligence, repealing the old no-fault action for "unseaworthiness" which had left shipowners vicariously liable for stevedore negligence.[3] The problem for the lower court was to establish the appropriate standard of negligence to effectuate the meaning of 33 U.S.C. § 905(b).

## II. *Standards and Instructions*

At the close of the plaintiff's evidence, the shipowner moved for a directed verdict, which was denied. After the verdict, the shipowner filed a motion for judgment notwithstanding the verdict under Fed.R.Civ.P. 50(b). In both instances, the shipowner contended that there was insufficient evidence of shipowner negligence. The shipowner contends that the positioning of the gangway was an obvious defect about which Davis and the stevedore knew or should have recognized, and that its negligence, if any, is vitiated by the subsequent action or inaction by the stevedore and Davis.

In *Davison v. Pacific Inland Nav. Co., Inc.*, 569 F.2d 507, 509 (9th Cir. 1978), this Court stated:

**3.** Although the 1972 amendments to the LHWCA ended the longshoreman's right to sue the stevedore company, this was balanced in part by an increase in workmen's compensation benefits. However, according to *Edmond*, the stevedore can be indemnified for all funds paid to the injured longshoreman under the previous workmen's compensation award. The longshoreman receives the portion of the award, if any, which exceeds the workmen's compensation award. The shipowner has no right to contribution or indemnity. While this allocation is an accurate construction of the

The test for the appropriate grant of a judgment notwithstanding the verdict is whether, without the need for weighing the credibility of witnesses, the evidence and its inferences, considered as a whole and viewed in the light most favorable to the party against whom such motion is granted, can support only one reasonable conclusion, *i. e.*, that the moving party is entitled to judgment notwithstanding the adverse verdict. *Wagle v. Murray*, 560 F.2d 401, 403 (9th Cir. 1977); *Cockrum v. Whitney*, 479 F.2d 84, 85–86 (9th Cir. 1973).

*See also* Fed.R.Civ.P. 50.

Review of this case under the above standard requires an examination of the jury instructions actually given in light of the Supreme Court's decision in *Scindia Steam Navigation Co. v. Santos, supra.* The trial court instructed the jury according to the following standard:

> The shipowner's duty to exercise ordinary care is limited to warning the Stevedore Company of any latent, that is hidden, defects or dangerous conditions of the vessel which the owner knows or should know in the exercise of ordinary care, but the shipowner's duty to exercise ordinary care does not require it to warn or protect the Stevedore Company or the longshoremen against dangers to which the Stevedore Company knows or should know in the exercise of its duties.

■ The shipowner contends that the gangway's position was not dangerous or a hidden defect. The trial court's instruction, referring to a generally "limited" duty on the part of the vessel owner, was rejected

statute, it does fly in the face of some policy concerns implicit in the Longshoreman's and Harbor Worker's Compensation Act, *supra*.

The intent of the 1972 amendments was to eliminate the stevedore from indemnity actions by shipowners, established in *Ryan Stevedoring Co., Inc. v. Pan Atlantic S.S. Corp.*, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956). *See Hurst v. Triad Shipping Co.*, 554 F.2d 1237, 1246–48 (3d Cir.), *cert. denied*, 434 U.S. 861, 98 S.Ct. 188, 54 L.Ed.2d 134 (1977), for ·commentaries on the 1972 amendments.

in part by the Supreme Court. *Scindia Steam Navigation Co. v. Santos, supra,* 101 S.Ct. at 1620 n.10. Instead, the Court generally adopted the principle that the shipowner has a reasonable duty of care to warn of defects and make conditions safe, affirming the Ninth Circuit holding in *Santos v. Scindia Steam Navigation Co., supra.* The Court left an important caveat in this standard, however, which must be considered due to the facts in this case. The Court held that "the shipowner's duty of reasonable care under the circumstances does not impose a continuing duty to inspect the cargo operations once the stevedore begins its work." *Id.* The shipowner also seeks to bring his case in this fold, contending that the defect was in the method of unloading chosen by the stevedore, and was not negligence on the part of the vessel.

In *Scindia,* the Court charted a middle course between the positions urged by the vessel owner on the one hand, and the longshoreman on the other. The vessel owner contended that even if the vessel learned of the hazard during cargo discharge operations, he is entitled to depend on the professional judgment of the stevedore, and has no duty to correct the condition. The longshoreman, however, urged this Circuit's view that the vessel is subject to a continuing duty to use reasonable care to discover dangerous conditions exposing longshoremen to unreasonable risk of harm and to exercise reasonable care under the circumstances to protect them. The Court held:

> We are of the view that absent contract provision, positive law or custom to the contrary—none of which has been cited to us in this case—the shipowner has no general duty by way of supervision or inspection to exercise reasonable care to discover dangerous conditions that develop within the confines of the cargo operations that are assigned to the stevedore. The necessary consequence is that the shipowner is not liable to the longshoremen for injuries caused by dangers unknown to the owner and about which he had no duty to inform himself. This conclusion is plainly consistent with the

congressional intent to foreclose the faultless liability of the shipowner based on a theory of unseaworthiness or nondelegable duty. The shipowner, within limits *is* entitled to rely on the stevedore, and owes no duty to the longshoremen to inspect or supervise the cargo operations. To the extent that the judgment of the Court of Appeals rested on a contrary view, we disagree.

*Id.* 101 S.Ct. at 1624 (emphasis added).

■ The instructions given by the trial court in this case impose a more restricted duty on the vessel than that contemplated by the Supreme Court in *Scindia:*

> The stevedoring company and its employees, including the plaintiff herein, assume control over their work areas aboard the vessel, and the shipowner does not have responsibility to supervise any of the stevedores' work activities in loading or discharging the cargo.

> The primary responsibility for the safety of a longshoreman lies with the stevedoring company. It is in the best position to provide the safe unloading of cargo. The stevedore is hired for his expertise in handling cargo safely, and its personnel make all the decisions as to how best to conduct the unloading.

The jury nevertheless granted judgment to the plaintiff. We therefore hold that the vessel cannot complain of the jury instructions.

We must next decide whether the plaintiff presented evidence sufficient to support the verdict in his favor. We conclude that he did.

■ There was testimony that the ship's officers had originally placed the gangway in the position alongside the vessel; that the vessel maintained concurrent control over the gangway during the stevedore's unloading operations; that the ship's officers had a continuing responsibility to correct the positioning of the gangway; and that Officer Burkhardt saw and appreciated the danger posed by the gangway. This evidence was sufficient to allow the jury to conclude, as it did, that the vessel was 20% negligent.

The jury apportioned the smallest percentage of the negligence to the vessel. It is the operation of maritime law as interpreted by *Edmonds v. Compagnie Generale Transatlantique, supra,* that increases the vessel's burden and makes its share of the verdict far more onerous. For all of these reasons, the trial court was correct in denying the vessel's motion for a directed verdict and judgment notwithstanding the verdict.

Nor are we persuaded by the shipowner's subsidiary contentions that no finding of shipowner negligence is proper in this case. First, the shipowner contends that a literal reading of the *Santos'* negligence standard from the Ninth Circuit's holding requires "a condition on the vessel" to involve shipowner negligence. The shipowner contends that since Davis was not "on the vessel" when the accident occurred, no liability can be found. In the first instance, the standard actually reads "on or near the vessel." *Santos v. Scindia Steam Navigation Co., supra,* 598 F.2d at 485. Moreover, the shipowner's reasoning and analogies are totally unpersuasive. This is not a case like *Anderson v. Iceland S.S. Co.,* 585 F.2d 1142 (1st Cir. 1978), where the court held the shipowner was not liable for injuries to a longshoreman who tripped and fell on the dock from slime created by the ship's cargo. *Anderson* is inapplicable here where an instrumentality of the ship, the gangway, and its positioning is the proximate cause of the accident. Furthermore, the shipowner's marine expert's testimony indicated that the ship's officers remained in concurrent control of the gangway throughout the period the cargo was being discharged. The fact that Davis may have been touching terra firma when he was injured has no legal significance in light of these facts.

Second, the shipowner claims that Occupational Safety and Health (OSHA) regulations indicate that it was the stevedore which breached its duty, not the shipowner. OSHA regulations do prohibit passing cargo over a vessel's gangway, or landing cargo in close proximity to the gang-way. 29 C.F.R. § 1918.21(i). The shipowner properly raised the issue of this OSHA regulation, and the following instruction was given to the jury in this case, at the owner's request:

> The sole responsibility for compliance with the regulations of the Occupational Safety and Health Act...in this case, rests with the Crescent Wharf and Warehouse Company, the plaintiff's employer.

It was proper to give this instruction. *Bachtel v. Mammoth Bulk Carriers,* 605 F.2d 438 (9th Cir. 1979). As indicated in *Bachtel,* such a regulation is one of the factors to be properly considered by the jury in arriving at their verdict. *Id.* at 446. The existence of the regulation and its reference to the stevedore's duty clearly assisted the shipowner's case. In light of *Bachtel,* the regulation does not require a directed verdict on behalf of the shipowner.

For all of these reasons, the judgment is AFFIRMED.