Mack **MOORE**, Plaintiff-Appellant,

v.

**M.P. HOWLETT, INC.,**
**Defendant-Appellee.**

**No. 196, Docket 82–7239.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 6, 1982.

Decided March 24, 1983.

---

Martin Lassoff, New York City (Zimmerman & Zimmerman, New York City, Morris Cizner, New York City, of counsel), for plaintiff-appellant.

Joseph T. Stearns, New York City (Walker & Corsa, New York City, William J. Blumenschein, New York City, of counsel), for defendant-appellee.

Before NEWMAN, KEARSE, and PRATT, Circuit Judges.

GEORGE C. PRATT, Circuit Judge:

In this third-party action against a shipowner brought under the Longshoremen's & Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. § 901 *et seq.* (1976), plaintiff longshoreman appeals from a judgment of the United States District Court for the Southern District of New York granting the shipowner's motion for judgment notwithstanding the verdict and dismissing the complaint. By special verdict the jury had found that the longshoreman was injured as a result of the shipowner's negligence. Concluding that there was insufficient evidence to impose any duty of care on the shipowner, the trial court granted judgment n.o.v. We conclude that there was sufficient evidence to support the verdict, and we reverse and remand with directions to reinstate the judgment entered in plaintiff's favor on the verdict.

Plaintiff-appellant Moore, a longshoreman employed by R. Martorella & Co., a stevedoring company (stevedore), was injured when he slipped on the deck of a floating crane owned by the defendant-appellee M.P. Howlett, Inc. (shipowner). The floating crane, which consisted of a crane mounted on a barge, was used to unload cargo ships. On the day of plaintiff's injury, the crew of the barge-crane and the stevedore were jointly engaged in unloading bulk sugar from the hatches of a ship moored at the Sucrest pier in Brooklyn, New York. Although the barge-crane was owned by the shipowner and operated by the shipowner's employees, it was the stevedore who directed where and how the crane was to be used.

The barge-crane floated between the pier and the cargo ship, and was secured to the pier by four lines, one running from each corner of the barge. Its crew consisted of an operator, who controlled movements of the crane, and a fireman, who maintained the oil-fired steam engine that powered the crane.

Unloading the ship was a fairly simple operation. Longshoremen used bulldozers in the ship's hold to push sugar into a pile under a hatch, through which the crane operator, following a longshoreman's signals, dropped the "clam bucket", picked up a load of sugar, and guided it over to the pier, where the sugar was deposited in a hopper. After a hatch was emptied, the longshoreman moved the barge-crane to a new position from which the crane could reach and empty the next hatch.

To move the barge-crane, four longshoremen came aboard. After the four lines that secured its corners were cast off the pier by other longshoremen, the four on board retrieved the lines, making ready to throw the lines back to the pier for mooring when the barge reached its new position. Longshoremen had two sources of power to move the barge. One was to run a line from the barge to a powered winch mounted on the pier. The other, used when the winch was broken, was to run a line from the barge around a cleat on the pier and then attach the line with a 50-pound hook to the crane's bucket. By lifting the bucket, the crane operator could then tighten the line and move the barge. Since the dock winch was frequently broken, the longshoremen and the crane crew often worked together to move the barge-crane by the second method. When the barge reached its new position, by whichever method, the longshoremen on deck had to quickly re-secure it by heaving the four corner lines back onto the pier where they would be fastened by other longshoremen.

At the time of plaintiff's injury, the entire deck of the barge-crane had been covered for at least three days with ice, water, and grease. The ice came from steam from the crane's boiler which had condensed and frozen on the deck, as well as from an ice storm which three days earlier had deposited one and one-half inches of ice pellets on the deck. The grease was from fuel oil that leaked from the steam engine.

It was the exclusive responsibility of the shipowner's employees to maintain the deck of the barge. Although the barge was equipped with rock salt and shovels to remove the ice, as well as material to absorb the grease, the crane crew would remove the oil and grease "maybe once every six months", and would remove the ice only if they had an "idle day". It is undisputed that they took no steps to remove either ice or grease from the deck at any time before the accident.

Because the dock winch was broken on the day in question, the stevedore attempted to move the barge using the second method. Plaintiff and three other longshoremen were directed to board the barge-crane to handle the four corner lines. When plaintiff came aboard, he recognized that the condition of the deck was slippery and dangerous, but neither he nor any representative of the stevedore asked the crane's crew to remedy the condition. After the mooring lines were cast off, the crane operator tried to move the barge by raising the bucket, but the line snapped. On the second attempt the line snapped again, but this time the 50-pound hook which attached the line to the bucket flew off and fell toward the deck. As plaintiff ran to avoid the falling hook, he slipped on the icy, greasy deck, and injured his groin and knee.

Plaintiff brought this action pursuant to § 905(b) of the LHWCA, claiming that he was injured by the shipowner's negligent failure to maintain the deck of the barge in a reasonably safe condition. Since the jury found for plaintiff, we must on this appeal "view the evidence and all inferences most favorably" to him. *Samuels v. Health & Hospitals Corp.,* 591 F.2d 195, 198 (2d Cir. 1979). Under the district court's instructions the jury necessarily found (1) that the shipowner knew of a dangerous condition on the deck of the barge, (2) that the shipowner should have anticipated that the longshoreman "will not discover or realize the danger or will fail to protect himself against it", and (3) that the shipowner failed to exercise reasonable care under the circumstances to prevent injury to the longshoreman. Following the court's instructions on comparative negligence the jury found the shipowner 65% negligent and plaintiff 35% contributorily negligent, and valued the plaintiff's injuries at $34,000. Accordingly, the trial judge directed that judgment be entered for the plaintiff for $22,100.

In granting the shipowner's motion under Fed.R.Civ.P. 50(b) for judgment notwithstanding the verdict, the district court looked to land-based principles of negligence and concluded that under § 343A of the Restatement (Second) of Torts, defend-

ant owed no duty to plaintiff, because there was no basis for the shipowner to anticipate that plaintiff would be unable to perform his limited responsibilities aboard the barge without injury.

## DISCUSSION

Both Congress and the Supreme Court have considered whether under the 1972 amendments to LHWCA a shipowner can be held liable to a longshoreman injured by a known or obviously dangerous condition. The House report accompanying the 1972 amendments to the Act offered an example of what would constitute negligent conduct by a shipowner, an example which is strikingly similar to this case.

> So, for example, where a longshoreman slips on an oil spill on a vessel's deck and is injured, the proposed amendments to Section 5 would still permit an action against the vessel for negligence. To recover he must establish that: 1) the vessel put the foreign substance on the deck, or knew that it was there, and willfully or negligently failed to remove it; or 2) the foreign substance had been on the deck for such a period of time that it should have been discovered and removed by the vessel in the exercise of reasonable care by the vessel under the circumstances.

H.R.Rep. No. 92–1441, 92d Cong., 2d Sess. (1972), *reprinted in* 1972 U.S.Code Cong. & Ad.News 4698, 4704. The Supreme Court recently held that a shipowner is not relieved of its duty to longshoremen merely because the stevedore negligently continues to work using obviously dangerous equipment, and it noted:

> It is also accepted that the vessel may be liable if it * * * fails to exercise due care to avoid exposing longshoremen to harm from hazards they may encounter in areas or from equipment under the active control of the vessel during the stevedoring operation.

*Scindia Steam Navigation Co., Ltd. v. De Los Santos,* 451 U.S. 156, 167, 101 S.Ct. 1614, 1622, 68 L.Ed.2d 1 (1981).

This circuit has also considered under what circumstances a shipowner has a duty to correct dangerous conditions facing longshoremen. *E.g., Lieggi v. Maritime Co. of the Philippines, "M/V Philippine Rizal",* 667 F.2d 324 (2d Cir.1981); *Evans v. Transportacion Maritime Mexicana SS "Campeche",* 639 F.2d 848 (2d Cir.1981); *Mattivi v. South African Marine Corp. "Huguenot",* 618 F.2d 163 (2d Cir.1980); *Giglio v. Farrell Lines, Inc.,* 613 F.2d 429 (2d Cir.1980). Following the principle of § 343A of the Restatement (Second) of Torts, which exempts a possessor of land from liability to an invitee for harm caused by known or obvious hazards "unless the possessor should anticipate the harm despite such knowledge or obviousness", we have concluded that "if the shipowner knows of the dangerous condition and should anticipate that, even if the condition is obvious, the stevedore will not or cannot correct it and the longshoremen will not or cannot avoid it, the shipowner has a duty to take reasonable steps to eliminate or correct the condition." *Lieggi,* 667 F.2d at 328; *see Evans,* 639 F.2d at 855–56. And as we noted in *Giglio,* 613 F.2d at 432–33, "The *sine qua non* of a ship's liability for an obviously dangerous condition arising during the process of loading or unloading is reasonable anticipation that the longshoremen will not be able to avoid it."

■ The shipowner is not relieved of liability as a matter of law simply because it relied on the stevedore to correct the condition, *Lieggi,* 667 F.2d at 328; *Evans,* 639 F.2d at 856–57, or because it relied on the stevedore's judgment to proceed with the work in spite of the condition, *Lieggi,* 667 F.2d at 328; *Lopez v. A/S D/S Svendborg,* 581 F.2d 319, 324 (2d Cir.1978). "In such circumstances the question whether the owner's actions were negligent or not was for the jury to decide." *Lieggi,* 667 F.2d at 328; *see Evans,* 639 F.2d at 856–57; *Napoli v. Hellenic Lines, Ltd.,* 536 F.2d 505, 509 (2d Cir.1976).

■ As the trial court acknowledged, there was ample evidence here for the jury to determine that the ice and grease on the deck created a dangerous condition, that

the shipowner had actual notice of the condition, that because of its continuing nature the shipowner had an opportunity to alleviate the condition, and that the plaintiff's injuries were proximately caused by his slipping on the grease and ice. This appeal focuses, therefore, on whether under the evidence the shipowner had a duty to anticipate the harm to plaintiff.

The trial court granted judgment n.o.v. on this issue because it concluded that there was insufficient evidence for the jury to find that defendant should have anticipated that plaintiff "would be unable to avoid whatever risk was posed by the condition of the deck." In support, the district court noted (1) that the longshoremen normally had no responsibilities that required them to go aboard the barge, (2) that when on this occasion plaintiff and his fellow workers went aboard, it was to perform "a very simple task", (3) that there was no basis for concluding that the shipowner should have anticipated that plaintiff could not perform his task and avoid whatever ice there was on deck, (4) that there was no evidence that the stevedore, who had primary responsibility for plaintiff's safety, perceived any danger to the longshoremen in performing this limited task aboard the barge, (5) that there was no evidence that plaintiff or his fellow workers, who were "experienced longshoremen", felt that they could not do the jobs safely or that they notified the shipowner's employees of danger, (6) that the shipowner had no reason to anticipate that plaintiff would run along the deck of the barge, and (7) that there was no basis for concluding that the shipowner should have anticipated that a longshoreman on the deck of the barge would fail to perceive himself in danger and fail to protect himself from the known hazard.

We disagree with the district judge's evaluation of the evidence. His determination was premised on his finding that since neither plaintiff nor the stevedore anticipated harm from the obvious hazard, it was unreasonable to hold the shipowner liable for failing to anticipate that harm. The fact that neither plaintiff nor the stevedore took any precautions in the face of this hazard does not relieve defendant of responsibility, for it is fundamental that there may be more than one proximate cause of an injury. Thus, the jury could have found that the stevedore, shipowner, and plaintiff all unreasonably believed that the longshoreman could perform his duties on the barge without injury. *See Lieggi,* 667 F.2d at 328 n. 8; *Lopez v. A/S D/S Svendborg,* 581 F.2d at 324–25. Furthermore, the jury was entitled to find that the deck was covered with ice and grease, that such a surface would be hazardous even to one walking cautiously, and that the hazard would increase with even the "simple task" of retrieving and then heaving a mooring line. The crane's crew testified that the responsibility to maintain the deck of the barge rested on them, rather than on the stevedore or the longshoreman. In short, a rational factfinder could reasonably conclude it was foreseeable that a longshoreman would be injured working on this ice and grease-covered deck, despite the willingness of the stevedore and the longshoremen to proceed with the work under obviously dangerous conditions.

Section 343A of the Restatement requires that a shipowner anticipate only a general danger of injury and not necessarily a specific occurrence such as, here, the breaking line, the falling hook, or the running longshoreman. All the activities that these longshoremen might be engaged in on the barge—walking, retrieving a line, heaving a line, avoiding a falling hook—required solid footing, and the jury could reasonably have concluded that the shipowner should have anticipated that the ice and grease jeopardized their safety as long as they were on board the barge. This is especially so, given the necessity for quick action to stop the forward motion of the barge and the need for even quicker action should an emergency arise such as a falling hook. These circumstances, which are supported by evidence that must be viewed most favorably to plaintiff, placed on the shipowner a duty to exercise reasonable care to prevent injury to the longshoremen.

Given such a duty, the jury reasonably found that it was breached by the shipowner. The evidence showed that although equipped with rock salt and shovels for the ice and with a material to absorb oil and grease, the vessel's crew did not use any of them to clear the deck. Under these circumstances, the jury could reasonably conclude that the crew of the barge-crane failed to exercise reasonable care and that the shipowner was therefore liable for plaintiff's injuries. The trial court's determination to the contrary is erroneous and should be reversed.

■ In addition to asking this court to set aside the judgment n.o.v. granted in favor of defendant, plaintiff maintains that we should order a new trial because the trial court improperly removed from the jury's consideration the issue of defendant's negligence based on the broken rope, and because the jury's verdict was "unconscionably low" in view of plaintiff's permanent total disability. Since plaintiff took no exception to the district court's charge that the jury could not find negligence based on the defective rope, that issue is not properly before us on this appeal. Fed.R.Civ.P. 51. Nor do we agree that the jury's award is unconscionably low. On the contrary, we consider the jury's determination of damages fair and reasonable in light of the evidence presented.

Therefore, we deny plaintiff's request for a new trial, reverse the judgment n.o.v. granted in favor of defendant, remand with a direction to reinstate the judgment entered on the jury's verdict.