[No. A016084. First Dist., Div. Three. Mar. 5, 1985.]

ADAM DUGAS, Plaintiff and Appellant, v.
C. BREWER & CO., LTD., Defendant and Respondent.

COUNSEL

Weltin & Van Dam, Philip R. Weltin and Brian E. Kerss for Plaintiff and Appellant.

Lillick, McHose & Charles, Graydon S. Staring, John H. Riddle and Alan L. Reeves for Defendant and Respondent.

OPINION

**WHITE, P. J.**—Adam Dugas, a longshoreworker who was injured while unloading cargo, appeals from a summary judgment in favor of the ship-owner, respondent C. Brewer & Co., Ltd. For the reasons set forth below, we reverse.

In reviewing a summary judgment, we are limited to the facts shown in the affidavits and those admitted and uncontested in the pleadings. We determine only whether the facts so shown give rise to a triable issue of fact. Moreover, the moving parties' papers are strictly construed, while those of the opposing party are liberally construed. A summary judgment

is a drastic procedure to be used with caution, and doubts as to the propriety of granting the motion are resolved in favor of the party opposing the motion. (*Corwin* v. *Los Angeles Newspaper Service Bureau, Inc.* (1971) 4 Cal.3d 842, 851-852 [94 Cal.Rptr. 785, 484 P.2d 953]; *Draper Mortuary* v. *Superior Court* (1978) 135 Cal.App.3d 533, 535-536 [185 Cal.Rptr. 396].) An appellate court will reverse a summary judgment if any kind of a case is shown. (4 Witkin, Cal. Procedure (2d ed. 1971) Proceedings Without Trial, § 199, p. 2844; *Fosgate* v. *Gonzales* (1980) 107 Cal.App.3d 951, 954-955 [166 Cal.Rptr. 233]; cf., *Bandeen* v. *United Carriers (Panama), Inc.* (9th Cir. 1983) 712 F.2d 1336, 1339.)

Examining the affidavits and counteraffidavits in light of the established rules the record reveals the following pertinent facts:

Dugas' amended complaint alleged that he sustained injuries on November 14, 1976, when he was driving a bulldozer on the unmanned *S.S. Barge Hawaii,* owned by Brewer, at the C & H Sugar facilities in Crockett, California. C & H Sugar employed a stevedore, California Stevedore & Ballast Co., who hired Dugas and other longshoreworkers from the union hall to operate bulldozers and other equipment in the hatches of the barge to unload the sugar. The bulldozers were used to shovel sugar that could not be reached by the shoreside cranes. After the sugar had been removed from the barge, the longshoremen would "off load" the bulldozers from the barge. On the day of the accident, Dugas was one of two bulldozer drivers in the hatch. While he had never off-loaded a bulldozer from a barge before the day of the accident and had not received any instructions as to how to do so, he had seen the process several times. Just before the accident, he had successfully off-loaded the first bulldozer.

At the time of his injury, Dugas was unloading the second bulldozer on the orders of his walking-boss. The process involved several steps: First, a cable was run from a forklift on the dock through a pulley and connected to the bulldozer at the bottom of the ramp. Next, Dugas drove the bulldozer (under its own power and while pulled by the forklift) up the ramp to the platform on the deck. The platform is about 5 feet wide and 16 feet long. The ramp, a permanent fixture and immobile part of the barge, is coated with an asphalt nonskid surface.

After reaching the top and while partially on the platform, the forklift and bulldozer are stopped and the forklift cable is disconnected. Next, Dugas had to move the bulldozer several feet further on to the platform and at a slight angle so that a cable from a gantry crane on the dock could be attached. Once the cable was attached, the crane on the dock lifted the bulldozer off the barge.

At the time of the accident, Dugas had reached the top of the ramp and had stopped the bulldozer. The cable from the forklift had been disconnected. Dugas then drove the bulldozer approximately two feet further on to the platform and stopped it again; he put the throttle up and was reaching to kill the engine. Although he had his foot on the brake, the bulldozer began to move. Dugas attempted to jump off the bulldozer, but was struck by the seat and knocked to a log between the dock and the barge.

Dugas' complaint alleged that Brewer was negligent, and that as the shipowner, should have known of the methods used to off-load the bulldozers and that the lack of a nonskid surface on the steel platform and the lack of restraining devices at the end of the ramp constituted hazardous conditions that existed before the barge was turned over to the stevedore.

■ The instant complaint was filed pursuant to the concurrent jurisdiction of our state courts over maritime torts. (*Fahey* v. *Gledhill* (1983) 33 Cal.3d 884, 887 [191 Cal.Rptr. 639, 663 P.2d 197]; *Baptiste* v. *Superior Court* (1980) 106 Cal.App.3d 87, 94 [164 Cal.Rptr. 789]. The parties agree that we must apply federal substantive law. (*Ibid.*) A determination of negligence is generally recognized as a mixed question of law and fact. The appropriate standard of conduct required of the shipowner is a question of law. (*Miller* v. *United States* (9th Cir. 1978) 587 F.2d 991, 994.)

The United States Supreme Court recently explained that pursuant to the 1972 amendments[1] to the Longshoremen's and Harbor Workers' Compensation Act (LHWCA) (33 U.S.C. § 905 (b))[2] an injured longshoreworker can recover damages against a shipowner in a statutory negligence action for lack of "due care 'under the circumstances.'" (*Scindia Steam Navigation Co.* v. *De Los Santos* (1981) 451 U.S. 156, 166 [68 L.Ed.2d 1, 12, 101 S.Ct. 1614].) The court reviewed the legislative history and purpose of

---

[1]The 1972 legislation became effective on November 26, 1972 (33 U.S.C. § 901; *Burris* v. *Global Bulk Carriers, Inc.* (3d Cir. 1974) 505 F.2d 1173, fn. 9 at p. 1178), long before Dugas was injured.

[2]To satisfy the mutually exclusive interests of the stevedoring companies, the longshoreworkers and the vessel owners, the 1972 amendments resulted in a legislative scheme characterized as a "paradigm of political compromise." (*Munoz* v. *Flota Mercante Grancolombiana, S.A.* (2d Cir. 1977) 553 F.2d 837, 840.) The longshoreworkers, engaged in the country's second most dangerous (after mining) occupation, gave up the opportunity to secure jury verdicts in actions against their employers, the stevedores; in exchange the longshoreworkers were assured of increased workers' compensation benefits. The stevedores gave up the chance to effectively defend these suits and avoid court imposed liability for the certainty of smaller, administratively determined awards. In addition, the stevedores were freed from the burdensome indemnification suits brought by shipowners. The shipowners, in exchange for giving up the right to indemnification, received legislation limiting their liability to damages caused by their own negligence in actions by injured longshoreworkers. (See *Davis* v. *Partenreederei M. S. Normannia* (9th Cir. 1981) 657 F.2d 1048, 1051.)

the 1972 amendments to eliminate the shipowner's vicarious liability for the negligence of the stevedore and to evenly allocate incentives between the vessel and the stevedore to provide a safe workplace for longshoreworkers. (See *Stance* v. *Jackson* (1984) 155 Cal.App.3d 838, 841-842 [202 Cal.Rptr. 480].) In *Scindia, supra,* the longshoreworker was injured by cargo that fell from an allegedly defective winch that was part of the ship's gear but operated by another longshoreworker. The United States Supreme Court affirmed the Ninth Circuit's reversal of a summary judgment in favor of the shipowner, as there was a triable issue of whether the shipowner had actual knowledge or was reasonably chargeable with knowledge of the defective winch. The court set forth alternate branches of analysis depending on whether or not the stevedore has begun its work.

If work has begun, the vessel's duty may be, but is not necessarily terminated. Additional issues then become relevant: the knowledge of the shipowner, the scope of the stevedore's legal duty and the degree of danger. In the category of cases like the instant one, involving injury in the course of the stevedore's operations, a rational approach to the shipowner's liability must flow from the premise that the stevedore is in a better position to prevent injuries to longshoreworkers.

*Scindia, supra,* 451 U.S. 156, teaches that the shipowner no longer has a duty to inspect or supervise once the work of the stevedore has begun. ■ "[A]bsent contract provision, positive law or custom to the contrary . . . the shipowner has no general duty by way of supervision or inspection to exercise reasonable care to discover dangerous conditions that develop within the confines of the cargo operations that are assigned to the stevedore. The necessary consequence is that the shipowner is not liable to the longshoremen for injuries caused by dangers *unknown to the owner and about which he had no duty to inform himself.* This conclusion is plainly consistent with the congressional intent to foreclose the faultless liability of the shipowner based on a theory of unseaworthiness or nondelegable duty. *The shipowner, within limits is entitled to rely on the stevedore, and owes no duty to the longshoremen to inspect or supervise the cargo operations. . . .*" (Italics added; *Scindia, supra,* 451 U.S. at p. 172 [68 L.Ed.2d at p. 15].)

The court in *Scindia* also described the circumstances in which reliance by the shipowner on the stevedore would not absolve the owner of liability.

■ First, before turning over the ship to the stevedore, the owner has a duty to warn the longshoreworkers of hidden defects that would be known to the shipowner in the exercise of reasonable care. He must also exercise care to deliver to the stevedore a safe ship with respect to gear, equipment,

tools and work space. (E.g., see *Subingsubing* v. *Reardon Smith Line, Ltd.* (9th Cir. 1982) 682 F.2d 779, 780 [shipowner had duty to warn as to non-obvious danger, loose "deadeye" on deck when worker came aboard].)

Second, the owner has a duty to avoid exposing the longshoreworker to harm from hazards under the act or control of the vessel. Third, even though the owner is generally relieved of responsibility for accidents which occur once the unloading process has begun, if the stevedore's judgment was so obviously improvident that the owner, if it knew of the defect and that the stevedore was continuing to use it, should have realized that the defect presented an unreasonable risk of harm to the longshoreworkers, then the owner had a duty to intervene and eliminate or neutralize the hazard. (*Scindia, supra,* 451 U.S. at p. 178 [68 L.Ed.2d at p. 19].)

Thus, *Scindia* does not foreclose all liability of a negligent shipowner to a longshoreworker. A negligent shipowner's liability, however, may be reduced but is not eliminated by the negligence of the stevedore or the longshoreworker. (*Subingsubing* v. *Reardon Smith Line, Ltd., supra,* 682 F.2d 779, 780.)

We deal here with an injury that occurred after stevedoring operations had begun and as a result of two open and obvious hazards: the lack of a nonskid surface on the platform and the lack of restraining devices. Once loading operations have begun, the shipowner can be held liable for injuries to the employees of the stevedore resulting from open and obvious dangers only in the event of actual knowledge of the hazards and if the shipowner is reasonably chargeable with knowledge that he could not rely on the stevedore to remedy the situation. (Cf. *Sarauw* v. *Oceanic Navigation Corp.* (3d Cir. 1981) 655 F.2d 526 [shipowner retained duty of care as to gangway supplied by stevedore]. But see *Taylor* v. *Moram Agencies* (9th Cir. 1984) 739 F.2d 1384 [shipowner's mere knowledge of presence of loose beans on winch platform, alone, not a basis for liability].

*Griffith* v. *Wheeling-Pittsburgh Steel* (3d Cir. 1981) 657 F.2d 25, 27, cert. den. *sub nom., American Commercial Lines, Inc.* v. *Griffith* (1982) 456 U.S. 914 [72 L.Ed.2d 173, 102 S.Ct. 1767] is apposite. In *Griffith, supra,* the shipowner knew of the defective condition of hatch covers and was aware that the stevedore regularly used a method of removing stuck hatch covers which would expose longshoreworkers to risk of harm.

Similarly here, Dugas' affidavits established that Brewer was aware that the platform at the end of the ramp used to off-load the bulldozers had no restraining devices and no nonskid surface. Brewer's affidavits indicated that it was also aware of the method of unloading bulldozers used by the

stevedore. Whether, given all of these circumstances, Brewer knew or should have known that the method would expose longshoreworkers to a risk of harm was a question of fact.

Clearly, the two hazards here alleged were a part of the barge and not subject to correction by the stevedore. (Cf. *Scindia, supra,* 451 U.S. at p. 175 [68 L.Ed.2d at p. 17].) Whether the shipowner should have anticipated this and whether it had knowledge of the stevedore's method of operation, are questions of fact. (*McCarthy* v. *Silver Line, Ltd.* (3d Cir. 1981) 661 F.2d 298 [longshoreworker hit on head by frozen piece of caked sugar during unloading].)

Brewer focuses on one of Dugas' responses to the interrogatories that mention the listing of the vessel as a contributing cause. Brewer also attempts to argue that it was absolved from liability as a matter of law because: (1) the barge had been used at least six times per year without complaint by expert stevedores; and (2) the accident was caused by the stevedore's failure to attach the dockside crane cable before the fork lift cable was removed.

These contentions pertain to questions of fact such as Brewer's knowledge and proximate cause. If the nonskid-proof steel platform and absence of restraining devices, both instrumentalities of the ship, were a substantial cause of the accident, the shipowner could be partially liable. (Cf. *Davis* v. *Partenreederei M.S. Normannia, supra,* 657 F.2d 1048 [shipowner held 20 percent liable as to unique pivoting gangway that jury found was the proximate cause of the accident].)

Comparative fault is the long-accepted risk-allocating principle under maritime law. (*Pan-Alaska, etc.* v. *Marine Const. & Design Co.* (9th Cir. 1977) 565 F.2d 1129; *Lewis* v. *Timco, Inc.* (3d Cir. 1983) 716 F.2d 1425, 1428.) The alleged defects also could be "continuing dangers" of which Brewer should have been aware given its knowledge of the method of unloading, even though admittedly, Brewer was not present. (Cf. *Bueno* v. *United States* (9th Cir. 1982) 687 F.2d 318, 320 [continuing danger of fire started by a floodlight brought on ship by stevedore].) There may be more than one proximate cause of an injury. (*Moore* v. *M.P. Howlett, Inc.* (2d Cir. 1983) 704 F.2d 39, 42-43 [ice and grease on deck].) The proper test of causation is whether the shipowner's conduct was a substantial factor in causing the injury. (*Matthews* v. *Ernst Russ S. S. Co.* (7th Cir. 1979) 603 F.2d 676, 681); cf. *Brown* v. *Link Belt Division of FMC Corp.* (5th Cir. 1982) 666 F.2d 110 [failure to warn not a cause in fact of accident where both vessel and stevedore were aware of the dangerous condition, i.e., hazardous weather in which personnel basket was used to transfer worker from

offshore platform to boat].) Here, a jury could find that both the shipowner and the stevedore unreasonably believed that Dugas could perform his duties on the barge without injury.

Equally without merit is the shipowner's additional contention that it is absolved from all liability as a matter of law because in one of his answers to the interrogatories Dugas stated that "the hazards would be obvious or reasonably anticipated by a reasonably competent stevedore." ■ An open and obvious hazard does not necessarily eliminate the duty of the shipowner (*Hill* v. *Texaco Inc.* (5th Cir. 1982) 674 F.2d 447, 451). The injury to the longshoreworker must be a "reasonably foreseeable" consequence of exposure to the open and obvious hazard for the shipowner to be liable. (*Woodruff* v. *United States* (4th Cir. 1983) 710 F.2d 128, 130 [danger from gap in safety net "reasonably foreseeable" although stevedore chose to have the gap in the area to allow faster and more convenient performance of its contract].)

The *sine qua non* of a ship's liability for an obviously dangerous condition arising during the process of loading or unloading is the reasonable anticipation that the longshoreworker will not be able to avoid it. The shipowner is not relieved of liability as a matter of law simply because it relied on the stevedore to correct the condition or because it relied on the stevedore's judgment to proceed with the work in spite of the condition.

Recovery for personal injuries by longshoreworkers is allowed where "the danger 'must be faced notwithstanding the knowledge.'" (*Pluyer* v. *Mitsui O. S. K. Lines, Ltd.* (5th Cir. 1982) 664 F.2d 1243, 1247 [unsafe ladder furnished by vessel].) In such circumstances, the question of whether the shipowners actions were negligent is for the jury to decide. (*Moore* v. *M.P. Howlett, Inc.*, *supra*, 704 F.2d at p. 42.)

Arguably, Brewer's furnishing of the platform without a nonskid surface and without restraining devices was tantamount to active negligence since the platform was the only one furnished and necessary for Dugas to perform his assigned task. If Brewer furnished an unsafe platform, the policy considerations which militate against imposing on the shipowner a duty to constantly monitor the stevedore's work, are not applicable. (Cf. *Pluyer* v. *Mitsui O. S. K. Lines, Ltd.*, *supra*, 664 F.2d at p. 1246.)

We note that the instant summary judgment was entered in October 1981, a few months after *Scindia*, *supra*, was determined. Thus the court below did not have the benefit of the subsequent decisions clarifying the *Scindia* rule which the Ninth Circuit has characterized as "a source of some confusion." (*Subingsubing*, *supra*, 682 F.2d 779, 780.)

(5b) Because here the affidavits have raised triable questions of fact as to Brewer's breach of duty to Dugas, the summary judgment is reversed.

Scott, J., and Anderson, J.,* concurred.

A petition for a rehearing was denied April 3, 1985.

---

*Assigned by the Chairperson of the Judicial Council.