**Steven WALDEN, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 97–CV–121 H(POR).**

United States District Court, S.D. California.

Feb. 25, 1998.

Preston Easley, San Pedro, CA, for plaintiff.

Brian Juge, Torts Branch, Civil Division, U.S. Department of Justice, San Francisco, CA, for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

HUFF, Chief Judge.

### FINDINGS OF FACT

1. The USNS OBSERVATION ISLAND is a public vessel of the United States.

2. From February 1 through February 20, 1995, Mr. Walden was working aboard the OBSERVATION ISLAND as a ship repair worker employed by Dolphin Industries pursuant to a contract between Dolphin Industries and the Department of Navy Military Sealift Command ("MSC").

3. On February 10, 1995, the date of Mr. Walden's injury, the OBSERVATION ISLAND was at sea.

4. Plaintiff Steven Walden is 32 years old. He was injured aboard USNS OBSERVATION ISLAND on February 10, 1995, while doing voyage repairs at sea for a marine repair contractor known as Dolphin Industries, which had three men on the vessel. As plaintiff left his stateroom, his head bumped against a low hanging air duct which ran from side to side across the entire passageway. The air duct and the overhead were both white. The air duct was 5'10" above the deck. The port engineer's testimony to the contrary, although given in good faith, was mistaken.

5. After the accident, plaintiff did not immediately report the incident. Later that day, he sought treatment from the ship's medical officer, who suggested that he take Motrin and return to work. He remained on the ship for 10 days. When plaintiff returned to San Diego he sought treatment with Dr. Han, who started him on physical therapy and placed him on temporary disability. Dr. Han returned plaintiff to light duty in March of 1995. Walden noticed an increase of numbness in his hands and extremities. On July 28, 1995, he had another work accident when he broke his ribs from jumping down from a ship area. He did not

report a history of numbness to his hands or problems with his neck. When seen Paradise Valley Hospital for this second work accident. By November, 1995, he saw Dr. Lukavsky who ordered an MRI of the cervical spine and requested him to stop working.

6. The neurologist, Dr. Jablecki, had the MRI scan performed, which revealed a herniated disc at C⅚ with spinal stenosis and a large disc bulge at C4/5, causing progressive cervical myelopathy. Dr. Jablecki pronounced the situation as "urgent," and made arrangements for immediate neurosurgical review. Surgery was performed on November 17, 1995. Dr. Jablecki testified that Walden has radiculopathy, with numbness in the hands, impairment of coordinated movements, and impairment of proprioception in his lower extremities, which interferes with coordinated use of the legs. Dr. Jablecki concluded that plaintiff is no longer able to do ship repair work.

7. The air duct which caused plaintiff's injury was in an area of the vessel under defendant's control and was in place and unmarked prior to plaintiff's assignment to the vessel. The height of the duct was 5'10". Defendant failed to turn the vessel over to the repairmen in a reasonably safe condition for doing their work.

8. Plaintiff's neck injury was caused by the negligence of the USA and by plaintiff's own negligence. The Court rejects the discretionary function exception as applied to the facts of this case.

9. Plaintiff was contributorily negligent by 25% for failure to exercise due care for himself. The Court concludes from the evidence presented that plaintiff failed to exercise reasonable care for himself as he walked in the passageway and hit his head on the duct.

10. Plaintiff's damages for past medical treatment are $28,050.00.

11. Plaintiff's damages for past wage loss, after taxes, are $46,788.00.

12. Plaintiff's damages for future loss of wage earning capacity, present cash value, after taxes, are $100,000.00. Plaintiff is employable, presents himself well, is of average intelligence and average manual dexterity.

13. Plaintiff's pain and suffering, both past and future, is $100,000.00.

14. Plaintiff's total damages caused by defendant's negligence are $206,128.50 plus statutory interest from the date of the judgment.

### CONCLUSIONS OF LAW

1. This Court has jurisdiction of this action pursuant to the provisions of the Public Vessels Act, 46 U.S.App. § 781–790, which incorporates the consistent provisions of the Suits in Admiralty Act, 46 U.S.C.App. § 741–752, and is brought subject to the provisions of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901–950 (LHWCA). Under the Public Vessels Act, an injured party has no greater claim against the United States than he would have against a private person under similar circumstances pursuant to LHWCA. 46 U.S.C.App. § 742, 743; *Canadian Aviator v. United States,* 324 U.S. 215, 227–8, 65 S.Ct. 639, 89 L.Ed. 901 (1945).

2. Plaintiff may recover against the United States, as vessel owner, if plaintiff establishes the Government's negligence by a preponderance of the evidence. Plaintiff has the burden of proving that he was injured and that the United States was negligent, i.e., that it owed him a duty and breached it. *Doucet v. Diamond M Drilling Co.,* 683 F.2d 886, 892 (5th Cir.1982), *cert denied,* 459 U.S. 1227, 103 S.Ct. 1234, 75 L.Ed.2d 468 (1983).

3. The scope of a vessel owner's duty under the LHWCA is defined in *Scindia Steam Navigation Company, Ltd. v. De Los Santos,* 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981), and the cases interpreting it. *See also, Taylor v. Moram Agencies,* 739 F.2d 1384 (9th Cir.1984). The duty of care delineated in *Scindia* as to longshoremen applies equally to repairmen. *Cook v. Exxon Shipping Co.,* 762 F.2d 750, 752 (9th Cir. 1985), *cert denied,* 475 U.S. 1047, 106 S.Ct. 1266, 89 L.Ed.2d 575 (1986).

4. In *Bjaranson v. Botelho Shipping Corporation,* 873 F.2d 1204 (9th Cir.1989), the Court described the various *Scindia* duties. The *Bjaranson* Court held that the fourth duty was that a vessel may be liable if it fails

to exercise due care to avoid exposing long-shoremen to harm from hazards they may encounter in areas, or from equipment, under the active control of the vessel during the stevedoring operation. *Bjaranson* defines this as the "active control duty."

5. Defendant United States of America is liable for plaintiff's injury because it failed to turn the vessel over to the repairmen in a reasonably safe condition. *Scindia Steam Navigation Company, Ltd. v. De Los Santos*, 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981). *Scindia* outlines the basic duties a vessel owes to longshoremen under 33 U.S.C. § 905(b), the Longshore Act. Generally, a vessel owes the longshoreman the duty of exercising due care under the circumstances. *Scindia*, p. 1622.

A) *The duty to turn over the vessel in such a condition that an experienced independent contractor can safely fulfill its contractual obligations.* The vessel owner must turn over the ship and its equipment in such condition that an expert and experienced stevedore will be able by the exercise of reasonable care to carry on its cargo operations with reasonable safety to persons and property and to warn the stevedore of any hazards on the ship or with respect to its equipment that are known to the vessel or should be known to it in the exercise of reasonable care, that would likely be encountered by the stevedore in the course of his cargo operations and that are not known by the stevedore and would not be obvious to or anticipated by him if reasonably competent in the performance of his work. *Scindia*, p. 1622

6. Defendant United States breached its duty to safely maintain an area under its control. The standard of care owed by vessels to longshoremen was established by *Scindia Steam Navigation Co., Ltd. v. De Los Santos*, 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981). *Scindia* held that a vessel may be liable for injuries to a longshoreman if the vessel "fails to exercise due care to avoid exposing longshoremen to harm they may encounter in areas or from equipment under the active control of the vessel during the stevedore operation." 101 S.Ct. 1614, 68 L.Ed.2d at 10. The plaintiff was injured in an area under the control of the vessel. In *Theriot v. Bay Drilling Corporation*, 783 F.2d 527 (5th Cir.1986), the court said:

We have stated that "the owner has a duty to avoid exposing longshoremen to harm 'from hazards under the act or *control* of the vessel.'" *Helaire v. Mobil Oil Co.*, 709 F.2d at 1036 (citing *Scindia*, 451 U.S. at 167, 101 S.Ct. at 1622). In fact, *Turner v. Costa Line Cargo Services, Inc.*, 744 F.2d 505, 508–509 (5th Cir.1984), held that a shipowner was liable for injuries sustained by a longshoreman who slipped and fell on an oil slick which was in an area within the shipowner's control.

7. Defendant United States retained control over the air duct and is therefore liable for its dangerous condition. In *Scindia*, supra, the Supreme Court held that a vessel may be liable "if it fails to exercise due care to avoid exposing longshoremen to harm from hazards they may encounter in areas or from equipment under the active control of the vessel during the stevedoring operation."

8. Defendant United States and Dolphin Industries maintained concurrent control over the air duct. Defendant United States is still liable for plaintiff's damages, with no offset for any Dolphin Industries negligence. *Davis v. Partenreederei*, 657 F.2d 1048 (9th Cir.1981); *Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256, 99 S.Ct. 2753, 61 L.Ed.2d 521 (1979); *reh. den.*, 444 U.S. 889, 100 S.Ct. 194, 62 L.Ed.2d 126 (1979).

9. A vessel is not relieved of liability because of the longshoreman's failure to complain of the hazard. When faced with a hazardous condition, neither the longshoreman or his employer are required to request the vessel to remedy the hazard for the longshoreman to recover from the vessel for injuries that are the result of dangerous conditions within the control of the vessel. *Theriot v. Bay Drilling Corporation*, 783 F.2d 527, 535, 536 (5th Cir.1986). Also, the fact that neither the longshoreman nor his employer took any precautions in the face of the hazard does not relieve the vessel of liability. *Moore v. M.P. Howlett, Inc.*, 704 F.2d 39, 43 (2nd Cir.1983).

10. The standard to be used in determining plaintiff's conduct is that of a reasonably prudent person under similar circumstances. *Almaraz v. Universal Marine Corp.,* 472 F.2d 123, 124 (9th Cir.1972). Plaintiff's recovery is reduced by his proportion of fault. *Davis v. Partenreederei M.S. Normannia,* 657 F.2d 1048 (9th Cir.1981).

11. The unmarked condition of the air duct was such that it constituted an unreasonable risk of harm even to an experienced repairman. *Scindia,* supra, at 167, 101 S.Ct. 1614; *Torres v. Johnson Lines,* 932 F.2d 748 (9th Cir.1991). However, the plaintiff is not relieved of his obligation to exercise reasonable care for himself.

12. The plaintiff is not chargeable with any negligent conduct of his employer or any of his fellow employees, and his recovery against the vessel owner cannot be reduced by any negligence of plaintiff's fellow employees. *Edmonds v. Compagnie Generale Transatlantique,* 443 U.S. 256, 99 S.Ct. 2753, 61 L.Ed.2d 521 (1979), *rehearing denied* 444 U.S. 889, 100 S.Ct. 194, 62 L.Ed2d 126 (1979).

13. Plaintiff can only recover those elements that he can prove with reasonable certainty. "The burden of proof is upon the party claiming damage to prove that he has suffered damage and to prove the elements thereof with reasonable certainty." *Peters v. Lines,* 275 F.2d 919, 930 (9th Cir.1960). It follows that any claim by plaintiff for lost wages, medical expenses, and impaired future earning capacity must be supported by concrete evidence, not merely an optimistic forecast of loss divorced from plaintiff's past history substantiated by the facts. See, *Fleming v. American Export Isbrandtsen Lines, Inc.,* 318 F.Supp. 194 (S.D.N.Y.1970), *aff'd* 451 F.2d 1329 (2nd Cir.1971).

14. An award for lost or future earnings must be based on actual proof of the amount of impairment and not mere conjecture. *Oregon–Washington R.R. & Nav. Co. v. Branham,* 259 F. 555, 557 (9th Cir. 1919); *Firth v. United States,* 554 F.2d 990 (9th Cir.1977). The base figure used to calculate future wage loss is the difference between what a person earned before the accident and what he would be able to earn upon returning to work, not necessarily in the same job.

15. An award for lost income, both past and future, is discounted to reflect lost wage income after both state and federal taxes have been deducted. *Jones & Laughlin Steel Corporation v. Pfeifer,* 462 U.S. 523, 536, 103 S.Ct. 2541, 76 L.Ed.2d 768 (1983). See 26 U.S.C. § 1 and California Revenue and Tax Code § 17041–17045. The award must also be discounted pursuant to the tax rates of 26 U.S.C. § 3101 to reflect amounts which would otherwise have been paid in social security taxes as well. *Madore v. Ingram Tank Ships, Inc.,* 732 F.2d 475, 478–479 (5th Cir.1984). Similarly, any award for future benefits, including future lost wages, and future medical care, if any, must be discounted to present value. *Jones & Laughlin Steel Corporation,* supra, at 537, 538, 103 S.Ct. 2541; *Chesapeake and Ohio Railroad Company v. Kelly,* 241 U.S. 485, 36 S.Ct. 630, 60 L.Ed. 1117 (1916); *Alma v. Manufacturers Hanover Trust Co.,* 684 F.2d 622, 626 (9th Cir.1982).

16. Loss, decrease, or impairment of earning capacity or power, consequent to a personal injury, is a proper element of damages. "Earning capacity" means the potential for earning money in the future but is not necessarily based on the amount of money being earned at the time of injury. *Jones & Laughlin Steel Corporation v. Pfeifer,* 462 U.S. 523, 535, 103 S.Ct. 2541, 76 L.Ed.2d 768 (1983), *Taenzler v. Burlington Northern,* 608 F.2d 796, 798 (8th Cir.1979). The purpose of an award of damages is to compensate for loss of earning capacity as distinguished from actual loss of earnings. *U.S. v. Jacobs,* 308 F.2d 906, 907 (5th Cir. 1962). Previous wages earned by a plaintiff do no put a cap on an award of lost future wages. *O'Shea v. Riverway Towing Co.,* 677 F.2d 1194, 1198 (7th Cir.1982). *Barnhart v. American Oil Co.,* 237 F.Supp. 492, 501 (E.D.Va.1965). It is assumed that if the injured plaintiff had not been disabled, he would have continued to work and to receive wages until retirement, disability or death. An award for loss of earning capacity is intended to compensate the worker for the loss of that stream of income. *Jones &*

**1236**

*Laughlin Steel,* supra, at 533, 103 S.Ct. 2541. In determining damages resulting from the loss or impairment of earning capacity, the court must look to the life expectancy at the time of the injury; the award must be based on a probable pecuniary loss reduced to its present net worth. *Pfeifer v. Jones & Laughlin Steel Corp.,* 678 F.2d 453, 460 (3rd Cir.1982), *Downie v. U.S. Lines Co.,* 359 F.2d 344, 347 (3rd Cir.1966).

17. Pursuant to 46 U.S.C.App. § 782, pre-judgment interest may not be awarded. Post-judgment interest may only be awarded at the statutory rate of 4 percent. 46 U.S.C.App. § 743; *Firth v. United States,* supra, at 995. The plaintiff may also recover costs of suit.

18. Any finding of fact deemed to properly be a conclusion of law is to be construed as such; any conclusion of law deemed to properly be a finding of fact is to be construed as such.